[S. F. No. 16074.   In Bank.—April 24, 1941.]

CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant, v. COUNTY OF SAN MATEO et al., Respondents.

John J. O'Toole, City Attorney and Dion R. Holm, Assistant City Attorney, for Appellant.

T. P. Wittschen, Thos. C. Boone, Ray L. Chesebro, City Attorney (Los Angeles), S. B. Robinson, Chief Assistant City Attorney, and Samuel Poorman, Jr., Assistant City Attorney, as *Amici Curiae*, on behalf of Appellant.

Gilbert D. Ferrell, District Attorney, and D. E. Sullivan Assistant District Attorney, for Respondents.

CARTER, J.—The controversy presented by this appeal involves the extent to which the improvements on the land of a municipality lying outside its corporate limits are subject to taxation by the county in which such improvements are situated. There is no substantial dispute as to the facts. Prior to March 3, 1930, the Spring Valley Water Company, a public utility, owned two reservoirs, Crystal Springs and San Andreas, and the flume hereinafter mentioned, which facilities were used for impounding and distributing water for sale to the inhabitants of the City and County of San Francisco. Connecting these reservoirs was a flume con-

sisting of two sections constructed of redwood. The dimensions of one section was 19,485 feet long, 28 inches high and 48 inches wide, with a capacity of carrying 17,500,000 gallons of water per day. It was constructed in 1900. The other section, built in 1898, was 9,940 feet long, 4 feet high and 6 feet wide, with a capacity of carrying 70,000,000 gallons per day. The flume and reservoirs were situated in San Mateo County. The flume was used to transport water from Crystal Springs reservoir to San Andreas reservoir owned by said company. On March 3, 1930, the plaintiff acquired the reservoirs and flume from the Spring Valley Water Company and continued the use of those facilities for the sale and distribution of water to its inhabitants. In 1931, plaintiff replaced the wooden flume with a concrete lined canal with the exception of a wooden flume 80 feet long used as a spillway. The first section of said canal had a carrying capacity of 60,000,000 gallons per day and the second of 80,000,000 gallons per day. Plaintiff also constructed in addition to the above, a concrete lined ditch 3,125 feet long and a pipe line 800 feet long. The concrete lined canal and ditch are used for the same purpose and as a part of the same water works system, and follow substantially the same course as the wooden flume. For the fiscal year 1936–1937, defendant county assessed to plaintiff 5.75 miles of flume, and levied a tax thereon against plaintiff in the sum of $583.30. The property taxed was presumably the old wooden flume. The assessed valuation upon which the tax levy was based was the same as that fixed when the Spring Valley Water Company owned the wooden flume. Plaintiff paid the tax under protest and brought this action to recover it. The trial court rendered judgment for defendants and plaintiff prosecutes this appeal therefrom contending that it is not subject to the tax because the wooden flume no longer exists since its replacement by the concrete lined canal, and that said canal is not taxable under section 1 of article XIII of the Constitution of California as amended in 1914.

Prior to its amendment in 1914, section 1 of article XIII, exempted all property belonging to a municipal corporation and city and county from taxation. By the vote of the electorate in that year, it was amended, and read:

"All property in the state except as otherwise in this constitution provided, . . . shall be taxed in proportion to its

value, to be ascertained as provided by law, or as hereinafter provided . . . and further provided, that property . . . such as may belong . . . to any county, city and county, or municipal corporation within this state shall be exempt from taxation, except such lands and the improvements thereon located outside of the city and county, or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation; provided, that no improvements of any character whatever constructed by any county, city and county, or municipal corporation shall be subject to taxation. All lands or improvements thereon, belonging to any . . . city and county, . . . not exempt from taxation, shall be assessed by the assessor of the county, . . . in which said lands or improvements are located, . . . ''

Both the plaintiff and defendants treat the flume as an improvement on land as contemplated by the laws on taxation and as such it should be considered. (*Pasadena* v. *County of Los Angeles*, 182 Cal. 171 [187 Pac. 418]; Rev. & Tax. Code, sec. 105.) It must be conceded that the flume was, when it was acquired by plaintiff, subject to taxation, and being so, and lying outside plaintiff's corporate limits, it was subject to taxation after such acquisition in so far as its character is concerned as being property ''subject to taxation at the time of the acquisition of the same by said . . . city and county.''

This brings us to the question of whether the concrete canal falls within that class of improvement designated in the Constitution as ''of any character whatever constructed by any . . . city and county . . .'', and· is for that reason exempt from taxation. The ordinary rule of statutory construction, in respect to provisions exempting property from general taxation, is that such provisions must be strictly construed to the end that the exemption will be neither enlarged nor extended beyond the plain meaning of the language employed. (*Cypress Lawn C. Assn.* v. *San Francisco*, 211 Cal. 387 [295 Pac. 813]; *Bay Cities Transp. Co.* v. *Johnson*, 8 Cal. (2d) 706 [68 Pac. (2d) 710].) That rule is not applicable when the property taxed belongs to the state or a municipal corporation for the reason that the taxation of such property is the exception rather than the rule. A liberal construction is to be followed in such instances. (*Pasadena* v. *County of*

*Los Angeles, supra.*) ▮ Nevertheless the essence of the problem is the intent of the electorate in adopting the 1914 amendment to the Constitution, and the object and purpose sought to be accomplished by the amendment is a highly important factor in ascertaining that intent. It has been settled by judicial declaration since 1920, that the object of the 1914 amendment was to protect from the loss of taxable properties, those counties in which municipalities acquire property for the operation of various municipal projects. (*Pasadena* v. *County of Los Angeles, supra.*) Prior to the amendment, the property of municipalities lying outside their corporate boundaries was exempt from taxation and that resulted in many instances in the county in which such property was situated losing large sources of revenue, a loss which it could ill afford. The aim of the amendment was to eliminate that condition. The object of the amendment was restated in 1936, in *San Francisco* v. *County of Alameda,* 5 Cal. (2d) 243, 245 [54 Pac. (2d) 462]:

"The undoubted purpose of the amendment was primarily to safeguard the tax revenues of smaller counties wherein large municipal corporations had purchased, or would acquire, extensive holdings and which would, except for the amendment, be exempt from local taxation. With the exemption in force, the serious financial embarrassment of the counties in which the holdings were situated was a reality. The argument sent to the electors of the state when the amendment was proposed also discloses that, unless the amendment be adopted, impending disaster would result to smaller counties by the removal from the local tax rolls of lands and water rights acquired and to be utilized in connection with the acquisition or extension of municipal water supplies such as were then in progress by the city and county of San Francisco and the city of Los Angeles. The adoption of the amendment was evidence that the acquisition of such lands and water rights should be without prejudice to the outlying counties whose existence from an economic and governmental standpoint depended upon the tax revenues derived therefrom. It was therefore provided that such lands and improvements thereon as were taxable at the time of the acquisition of the same by municipalities should continue to be taxable and should not be exempt from local taxation." This announced purpose of the amendment has evidently been

satisfactory to the voters as no change has since been made. ■ In furtherance of that purpose the intent of the amendment must have been to preserve for taxation not only the identical improvements existing on the property at the time of the acquisition of the property by the municipality, but also substitutes for the same and replacements thereof. The improvements constructed on the property by the municipality which are exempt, are only such as are of an entirely new character and not theretofore existing in any form. In this connection it may be noted the words ''construct, constructed and construction'' generally import the creation of something new and original that did not exist before rather than replacement, repair or improvement. (*Platt* v. *San Francisco,* 158 Cal. 74, 92 [110 Pac. 304] ; *Cabell* v. *City of Portland,* 153 Or. 528 [57 Pac. (2d) 1292, 1297] ; *Board of Supervisors* v. *State Highway Com.,* 188 Miss. 274 [194 So. 743, 748] ; *Carlson* v. *Kitsap County,* 124 Wash. 155 [213 Pac. 930].) Otherwise by merely repairing, enlarging or replacing existing improvements, the county in which the property was located would lose the tax revenues formerly received from such improvements, while the municipality would be enjoying the same use and benefits from the improvement as it did prior to the replacement, at least to the extent of the value of the improvement as it originally existed. While the concrete canal in this case is of larger dimensions and has a greater capacity than the wooden flume, it is substantially the same improvement. It is used for the same purpose and is a part of the same water works system. Both are used as conduits for transporting water. It cannot fairly be said that the concrete canal is different in character from the wooden flume. For these reasons it must be concluded not only that the concrete canal is not an improvement constructed by the plaintiff and exempt from taxation within the meaning of the Constitution, but also that the improvement taxed was in existence when the tax was levied. The improvement was in existence at the time the water works system was acquired by plaintiff, but it is a concrete canal now instead of a wooden flume. ■ Plaintiff cannot complain that the description of the flume on the assessment rolls is insufficient inasmuch as it has not been misled. It unquestionably knew what property was assessed to it. (*L. W. Blinn Lumber Co.* v. *City of Los Angeles,* 216 Cal. 474 [14 Pac. (2d)

512, 84 A. L. R. 1304].) The clear intent and purpose of the 1914 amendment to the Constitution has been accomplished.

The judgment is affirmed.

Shenk, J., Traynor, J., Curtis, J., and Edmonds, J., concurred.

Appellant's petition for a rehearing was denied May 22, 1941.