[Civ. No. 1225. Fifth Dist. Mar. 3, 1970.]

SACRAMENTO MUNICIPAL UTILITY DISTRICT,
Plaintiff and Appellant, v.
COUNTY OF EL DORADO, Defendant and Respondent.

COUNSEL

E. K. Davis and David S. Kaplan for Plaintiff and Appellant.

Daryl J. McKinstry and Noble Sprunger, County Counsel, and Alvin Landis for Defendant and Respondent.

OPINION

THE COURT.—In May 1965, appellant utility district filed a complaint in the Superior Court of Plumas County against respondent, County of El Dorado, to recover taxes assessed by the county and paid by the district under protest. The action was brought pursuant to Revenue and Taxation Code section 5138. At issue was the assessment for the tax year 1964-65, which appellant contended was void because (1) it was imposed upon tax exempt property, (2) was discriminatory, and (3) was indefinite. It further alleged that an application had been filed with the State Board of Equalization, and that following a hearing the board had denied relief. In March and September 1966, supplemental complaints were filed seeking to recover first and second installments of taxes paid under protest for the tax year 1965-66. In June 1967, appellant filed a second complaint seeking to recover taxes paid under protest for the tax year 1966-67; and in April 1968, appellant filed a third complaint seeking to recover taxes paid under protest for the tax year 1967-68. The property involved and the issues were the same in all three cases, except that discrimination was not an issue in the second and third cases. By stipulation the first case was tried on the pleadings, the agreed statement of facts filed with the State Board of Equalization, the transcript of the hearing before the board and all exhibits filed therein. On January 3, 1968, the court filed its memorandum of decision. On January 31, 1968, the first two cases were consolidated by stipulation. Findings of fact and conclusions of law in the consolidated cases were filed on April 29, 1968. On May 24, 1968, by stipulation, the three cases were consolidated for judgment. On the same day, a judgment was filed in the three consolidated cases, involving four tax years. The judgment, which we affirm, was in favor of the county.

After careful study of the record, the briefs, applicable authorities, and

the memorandum of decision of the trial court, we have concluded that we cannot improve upon that decision. Accordingly, we adopt it as the opinion of this court. This decision reads as follows:

Plaintiff, a municipal utility district, brings this action under Section 5138 of the Revenue and Taxation Code to recover taxes paid under protest. The taxes in controversy are real property taxes for the tax years 1964-65 and 1965-66.

Defendant county, pursuant to article XIII, section 1, of the California Constitution, assessed for those years certain water rights owned by plaintiff and improvements consisting of a dam, a spillway, an auxiliary dam, and a dike, all owned and constructed by plaintiff and used by plaintiff to store water for the purpose of generating electric power. All said properties are situated in the County of El Dorado, and will be referred to herein as the Loon Lake Project, although other designations are used in certain of the exhibits and diagrams.

Plaintiff challenged the validity of the assessments before the State Board of Equalization by filing with said Board applications for review, equalization, adjustment, and cancellation of the assessments in question in accordance with Section 1822 of the Revenue and Taxation Code. After hearings the Board filed decisions denying plaintiff's applications. Thereafter plaintiff made timely payment of the subject taxes, under protest, and filed this action for refunds.

Pursuant to written stipulations, the matter is before this court upon the record made at the Board hearings, the file and exhibits lodged here, the briefs lodged by counsel in accordance with the stipulations, oral argument before the court, and supplemental briefs upon the sole issue of the scope of review to be had before the court. The case is now submitted to the court for decision.

Plaintiff does not challenge the valuation of the water rights and improvements for assessment purposes nor the method used to determine such valuations, but contended before the Board and contends here that (1) the Loon Lake improvements assessed to plaintiff are exempt from taxation under article XIII, section 1, of the Constitution because they are improvements constructed by plaintiff and are not taxable as "replacements" for the old Loon Lake Dam because that dam had already been replaced by Stumpy Meadows Dam before the assessed improvements were constructed; (2) the failure of defendant's assessor to assess similar improvements and similar and identical water rights owned by the only other taxpayer in plaintiff's class establishes that the taxes in controversy are discriminatory and hence

invalid; and (3) the assessments upon which the taxes in controversy are based are invalid because they are incomplete and indefinite in form.

As an alternative to its first contention set out above, and in the event of a finding that all the subject improvements are not exempt under the constitutional provision, plaintiff contends that only the new Loon Lake main dam should be assessed and taxed, for the reason that the main dam, and that dam only, was the replacement facility.

■ At the outset, the court is faced with a question as to the scope of review by this court of the evidence before the Board. It is defendant's view that the court is limited to a determination of whether the record before the Board contains substantial evidence to support the express or implied findings of the Board. Plaintiff, with some reservations, appears to agree that the "substantial evidence" rule applies to the record before the Board upon the "discrimination" issue, but contends that the "replacement" and "form of the assessment" issues present questions of law alone rather than of fact and are issues for decision by the court independently of the decisions of the Board and unlimited by any rule according weight to the Board's "findings" or decision.

The matter of the scope of review to be had in the instant proceeding was the subject of supplemental briefing herein, and counsel have set out at length the authorities supporting their opposing contentions in respect to the "replacement" and "form of the assessment" issues. An extensive review herein of those authorities is unnecessary to the purposes of this memorandum. It is sufficient to note that the court is persuaded by the approach in *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843 [337 P.2d 465], and kindred cases, that plaintiff is correct as to review of the "replacement" and "form of the assessment" issues (although as to the latter issue it does appear that the issue is, to some extent, a question of mixed law and fact) and accepts the proposition that it is bound by the "substantial evidence" rule in reviewing the "discrimination" issue.

## The "Replacement" Issue

The assessments upon which the taxes in controversy are based pertain to water rights and improvements at Loon Lake, a reservoir located in the Sierras, approximately 35 miles northeast of the City of Placerville, El Dorado County, California, at an elevation of about 6,425 feet above sea level. There formerly existed at the outlet of Loon Lake an old dam, constructed by Chinese labor in the 1880's, capable of storing 10,000 acre-feet of water. Water from the lake was transported through a series of watercourses, flumes and ditches to the Georgetown area of El Dorado County,

over 30 airline miles to the west, where it was used for irrigation and domestic purposes.

Prior to 1952 the Loon Lake water storage and transmission system was owned and operated by the Georgetown Divide Water Company, Ltd., a California corporation (hereinafter referred to as the "Company"). In that year, by written agreements, the Georgetown Public Utility District (hereinafter the "District") took over operation of Loon Lake water storage and the transmission system upon an arrangement of installment purchase.

In 1957 plaintiff agreed with the District to purchase such of the water rights and other properties of the Company as were located at Loon Lake and Gerle Creek, in the upper or eastern portion of the subject watershed. The purchase price was 41 annual installments of $97,000 each. These payments were expressly required by written agreement to be used by the District for completion of the property purchase from the Company, retirement of bonds, if any, or other obligations issued by the District to obtain funds for construction of the lower Stumpy Meadows Dam and Reservoir project (hereinafter "Stumpy Meadows project"), including any obligations to the Federal Government, and directly toward the cost of construction of water storage, transmission or diversion facilities for the Stumpy Meadows project.*

Pursuant to the 1957 agreement between the District and plaintiff, the District constructed Stumpy Meadows Dam and Reservoir on Pilot Creek, in the lower or western portion of the watershed, and constructed new diversion and transmission facilities to convey the water from Pilot Creek to Georgetown.

In 1961, also as provided by the several agreements, the Company deeded all of its properties and water rights to the District, and the District in turn deeded to plaintiff such of the properties and water rights as were located in the Loon Lake-Gerle Creek area.

In 1962, after the District had completed its construction at Stumpy Meadows, plaintiff destroyed the old Loon Lake Dam, and in the summer of 1963 completed construction of a new, much larger dam on the same site to store water for use in the generation of electricity. Plaintiff also constructed a spillway adjacent to that dam and constructed an auxiliary

---

*The agreement does not provide that the new facility [Stumpy Meadows] was to be a "replacement" of the properties being acquired by plaintiff, as is suggested in plaintiff's briefs, but the recitals section of the agreement does provide that plaintiff desires to pay the District a sufficient amount of money "to enable Georgetown (the District) to construct new and enlarge and improve existing facilities on Pilot Creek and Onion Creek and their tributaries in order to develop a substitute and more satisfactory water supply. . . ."

dam and a dike at other points on the perimeter of the now enlarged Loon Lake. The auxiliary dam is more than a mile to the southwest of the main dam and the dike is over half a mile to the northeast of the main dam. The reservoir created by the new works has a storage capacity of 76,500 acre-feet in contrast to the 10,000 acre-feet capacity of the reservoir created by the old Loon Lake Dam.

By the assessments upon which the taxes in controversy are based defendant's assessor assessed to plaintiff the water rights in the Loon Lake area formerly owned by the Company, and the new Loon Lake main dam, the spillway, the auxiliary dam, and the dike, upon the theory that all four of these improvements are replacements for the old Loon Lake Dam.

Article XIII, section 1, of the California Constitution formerly granted a blanket exemption to all municipal property, wherever located and whenever acquired. In 1914, however, the constitutional provision was amended in pertinent part to provide the following exception to that exemption: " . . . except such lands and the improvements thereon located outside of the county, city and county or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county or municipal corporation; provided, that no improvements of any character whatever constructed by any county, city and county or municipal corporation shall be subject to taxation."

The right granted by the 1914 amendment to tax municipal property has been construed to include not only improvements subject to taxation when acquired, but also replacements and substitutes for those improvements. (*City & County of San Francisco* v. *County of San Mateo,* 17 Cal.2d 814 [112 P.2d 595].) And in the event a replacement is made, it is taxed at its fair market value, and not at that of the improvement that was replaced. (*City of Pasadena* v. *County of Los Angeles,* 37 Cal.2d 129 [230 P.2d 801].)[1]

The object of the 1914 amendment was to protect from the loss of taxable properties those counties in which municipalities acquire property for the operation of various municipal projects. (*City & County of San Francisco* v. *County of San Mateo, supra.*) "In furtherance of that purpose the intent of the amendment must have been to preserve for taxation not

---

[1]Subsequent to the decision below, to wit, on November 5, 1968, section 1.63 was added to article XIII of the California Constitution. It provides: "No replacement or substitution, made subsequent to March 1954, of improvements belonging to any county, city and county, or municipal corporation, shall, while owned by and in the possession of any county, city and county, or municipal corporation, be assessed at more than the highest value ever assessed upon the improvement replaced by such replacement or substitution improvement."

(Footnote added by this court.)

only the identical improvements existing on the property at the time of the acquisition of the property by the municipality, but also substitutes for the same and replacements thereof. The improvements constructed on the property by the municipality which are exempt, are only such as are of an entirely new character and not theretofore existing in any form. In this connection it may be noted the words 'construct, constructed and construction' generally import the creation of something new and original that did not exist before rather than replacement, repair or improvement. [Citing cases.]" (*City & County of San Francisco* v. *County of San Mateo, supra,* p. 819.)

█ The instant controversy cannot of course be resolved by mere references to the applicable body of law, nor to circumstances of geography, but only by analysis of all the relevant facts and circumstances of the case. Plaintiff contends that the improvements constructed by it at Loon Lake are not "replacements" of the works which it purchased from the District for the reason that the Stumpy Meadows project owned and constructed by the District is a "replacement" of the old Loon Lake Dam and improvements, and that such "replacement" had already been effected prior to construction of the improvements which are now assessed to plaintiff.

Plaintiff relies not only upon the chronology of events and development of the several projects, but also upon the agreement which it entered into with the District. That agreement, however, neither compels nor permits a finding that the Stumpy Meadows project is a "replacement" or "substitute" for the properties acquired by plaintiff at Loon Lake. (See, particularly, paragraphs 5 and 6 of said Agreement, dated April 23, 1957.) But the agreement between plaintiff and the District is not, in any event, controlling of the fact as to which facility constitutes the replacement facility. The parties to that agreement cannot between themselves assume the functions of the assessor and the county by determining for themselves the issue of replacement or the question of what real property is subject to assessment for purpose of taxation. (*Carpenter* v. *Pacific Coast Ins. Assn.,* 10 Cal.2d 304 [74 P.2d 511]; *Douglas Aircraft Co.* v. *County of Los Angeles,* 137 Cal.App.2d 803 [291 P.2d 85].)

The chronology of events disclosed by the evidence, and in particular the construction and times of activation of the subject projects are relied upon by plaintiff in large part to distinguish the instant controversy from the case of *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843 [337 P.2d 465]. But that case is not so easily distinguished.

In the first place, as has been pointed out above, the contractual arrangements between plaintiff and the District cannot be relied upon as a point of distinction between the two cases for the dual reason that the contract,

read as a whole, does not permit nor does any relevant legal authority allow the parties alone to determine the issue of taxability.

In addition, as the court views the evidence in the present proceeding, there are more points of similarity than of dissimilarity between this controversy and the Mono County case. Here, as in *Mono,* the old facility is destroyed or rendered ineffective and a new dam impounds the waters of the same lake and tributaries as the old dam. The new improvements are much larger and impound much more water than the old dam, including, in part, additional water from another watershed. The water of the old lake was used for irrigation and domestic purposes and those of the new lake for the generation of electricity. The new facilities erected at Loon Lake are not only much larger, but more efficient and have a much greater value than the original works. It is significant, too, that the water rights purchased by plaintiff were purchased for and are used in conjunction with the Loon Lake and not the Stumpy Meadows project, and this fact is not as irrelevant as plaintiff contends, in the light of succeeding events.

Upon the entire evidence, and in the light of the applicable law, plaintiff has not sustained the burden of establishing that the subject properties are wholly exempt from taxation under article XIII, section 1, of the Constitution. ■ There remains, however, the alternative question whether a part of plaintiff's improvements (i.e., improvements other than the main dam) may fall within the constitutional exception. A sufficient answer to that question is provided by the following excerpt from Defendant's Brief: "To answer this question, we must again look to the court decisions on replacements. Using the language of the Supreme Court in the *Mono* case, we may ask: Which of the four components are necessary to assume the functions of the old dam, — impounding the waters of Loon Lake and its tributaries? As the old dam has been replaced, can we say that any of these components are not essential to impound the water of Loon Lake and its tributaries as it exists today? We know from the *Mono* case that the greater capacity of the reservoir, its more elaborate and efficient operation, and the greater value of its facilities do not serve to differentiate the improvements from their character as replacements. Since all four components are essential to perform the function of impounding Loon Lake and its tributaries, all must be considered replacements of the dam. We can no more consider the main dam a replacement, and the dike as not, than we can remove the dike without draining the lake."

Each of the four components of the new dam is necessary to perform the function of the old Loon Lake Dam, hence all four must be considered as "replacements" for the old dam. (See *City of Pasadena* v. *County of Los Angeles,* 37 Cal.2d 129 [230 P.2d 801].)

## THE "DISCRIMINATION" ISSUE

During the assessment years 1961-1962 through 1965-1966 no public agency in El Dorado County other than plaintiff and Georgetown Divide Public Utility District owned either water rights or improvements subject to assessment under article XIII, section 1, of the Constitution. Plaintiff properly contends, therefore, that it is reasonable to regard these two taxpayers as constituting a class by themselves.

■ Based upon the failure or omission of defendant's assessor over the years to assess to the District (1) numerous parcels of land owned by the District, (2) the water rights acquired from the Company and retained by the District, covering the waters of Pilot Creek and Onion Creek (acquired by the District from the Company in the same transaction in which the Loon Lake water rights were acquired by plaintiff), (3) the Loon Lake water right during the period prior to its conveyance to plaintiff; and (4) improvements constructed by the District under the Stumpy Meadows project, including the diversion and transmission facilities, while at the same time assessing the subject and other properties to plaintiff, plaintiff contends that the taxes in controversy are discriminatory and therefore invalid.

Upon this issue, as has been indicated above, the question presented to the court is whether there was evidence of sufficient substantiality before the Board to justify its implied findings that the taxes in question are not discriminatory and hence are valid. Upon review and analysis of the evidence before the Board, the court is of the opinion that the Board's decisions are supported by substantial evidence and that there was no arbitrariness displayed by the Board.

Not all errors of omission or commission import bad faith or wrongful intent. And it is true, also, that what may appear at first impression to be a "violation of plain duty" may be justified, or at least satisfactorily explained. Hindsight is a great teacher, but a poor provider, and in its light the defendant's assessor would most certainly conduct a study and investigation into the subject water rights, properties, and relationships between the parties in a manner more consistent with plaintiff's suggestions than with the steps which were actually taken. It is common knowledge that the assessment of water rights is a highly complex function of the assessor's work, and it is expected that a knowledgeable performance of that function includes reliance upon the advice and assistance of surveyors, engineers and often financial experts. Such undertakings often and necessarily involve unusual expenditures not only of money and labor, but of time. What may appear to be an inordinate amount of time or even delay to the parties or to the court, may be viewed in a different context by those accustomed to

viewing such problems. It cannot here be said that there was not before the Board sufficient evidence of a substantial character to justify the Board in reaching its conclusions, and neither plaintiff's logical presentation of the facts nor the authorities submitted by plaintiff compel a different conclusion upon the part of the court.

In particular, there is here no evidence of a plan or scheme, knowingly or unknowingly upon the part of the assessor, to bestow any favored treatment upon the District or to discriminate against plaintiff, and no deliberate unfairness or discrimination may be inferred from his failure to assess the District's properties. The assessor's mistaken beliefs as to the boundaries of the District and the taxability of the properties of the District may seem no more reasonable at this date than the ineffective manner in which he has now tried to correct earlier errors and omissions. But viewed in the light of all the evidence upon the issue it cannot be said that there was any lack of good faith or other wrongful conduct upon the part of the assessor which compels the finding sought by plaintiff. No deliberate or systematic pattern of discrimination is shown, and this is what distinguishes the instant case from such cases as *Simms* v. *County of Los Angeles,* 35 Cal.2d 303 [217 P.2d 936], and like cases.

### The "Form of the Assessment" Issue

The least critical issue of the case, but a proper one on the law, is posed by plaintiff's contention that the assessments upon which the taxes in controversy are based are void because the assessments are defective in form.

Clearly the assessments do not comport in form with the relevant statute and the requirements contained in the Assessor's Handbook adopted by the Board, and this failure of compliance provokes plaintiff's main charge that it cannot be determined from the county assessment rolls alone whether the improvements assessed consist of the Loon Lake main dam only, or whether they include the spillway, the auxiliary dam, the dike, and other improvements of plaintiff situated nearby.

It is pointed out by defendant, and by the record here, however, that plaintiff was not confused or misled by the insufficiency of description. Plaintiff knew exactly what was being assessed, following oral and written communications with the assessor and his representatives prior to preparation of the subject rolls.

While it is true that the reports of cases excusing a lack of complete description (notably *Alpaugh Irr. Dist.* v. *County of Kern,* 113 Cal.App.2d 286 [248 P.2d 117]) disclose that the descriptions therein complained of

were more specific than the descriptions placed upon the subject assessment rolls, that is small reason for voiding the subject assessments upon the facts of this case, and upon this record the image of justice would be little enhanced by such a holding.

The judgment is affirmed.

A petition for a rehearing was denied March 30, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1970.