[Civ. No. 30182. First Dist., Div. One. Aug. 19, 1974.]

HUNT-WESSON FOODS, INC., Plaintiff and Respondent, v.
COUNTY OF ALAMEDA et al., Defendants and Appellants.

## COUNSEL

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendants and Appellants.

Johnston, Klein, Horton, Solomon & Baker, Johnston, Klein, Horton & Solomon, V. Judson Klein and Paul W. Baker for Plaintiff and Respondent.

Charles R. Ajalat and Willis, Butler & Scheifly as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**KONGSGAARD, J.**\*—This is an appeal from a judgment of the superior court which reviewed and reversed a decision of the Alameda County Assessment Appeals Board which in turn had denied the plaintiff tax-payer a reduction in its 1967 property tax assessment.[1] Plaintiff protested the assessment but paid the tax and filed suit to recover the taxes paid under protest pursuant to section 5103 et seq. of the Revenue and Taxation Code. The superior court in reviewing the proceedings before the Alameda County Assessment Appeals Board independently weighed the evidence and rendered a money judgment in favor of the taxpayer and in effect overruled the decision of the county assessment appeals board.

The pivotal issue in this appeal is whether the superior court, sitting in review of a determination of valuation by a local board of equalization,

---

\*Assigned by the Chairman of the Judicial Council.

[1]The taxable property which is the subject of this law suit was located in the City of Hayward in Alameda County and was subject to taxation by the city as well as the county. The legal position of the city and the county is the same in this appeal.

can exercise its independent judgment on the evidence presented to the local administrative agency. To state the issue in a different way, what is the proper scope of judicial review of the decision of a local board of assessment appeals. For the reasons expressed hereafter we conclude the lower court erred in applying the independent judgment test in reaching its decision.

## Factual Background

As of the first Monday in March 1967, the taxpayer was the owner of business property in Alameda County, including inventories, machinery and equipment. In January of 1967, the new Assessor of Alameda County suggested to his staff that henceforth property in Alameda County should be valued for assessment purposes according to methods prescribed by the State Board of Equalization. In the past the Alameda County Assessor had not followed the State Board of Equalization methods for valuing machinery and equipment. Pursuant to these directions the staff of the county assessor was instructed to prepare a new schedule for valuing machinery and equipment which attempted to reflect the methods utilized by the State Board of Equalization. The method of evaluation utilized by the State Board of Equalization was a replacement cost less normal depreciation. Under this method the market value of equipment was calculated by (a) "trending up" the equipment's original cost to an estimated replacement cost by using a scale of price index factors, and then (b) depreciating this factor according to the age of the equipment by the application of "percent good" factors measuring loss in value from physical wear and tear and obsolescence. The price index factors and the percent good factors to be used for this purpose have been published annually by the State Board of Equalization.

In accordance with the new directive the staff of the assessor's office prepared a new depreciation schedule which purported to reflect both the index factors and the percent good factors into a single schedule. At the hearing before the assessment appeals board there was evidence presented by the respondent indicating that the new schedule of percent good factors was shifted one year from the schedule published by the state board so that no depreciation would be allowed for the particular year in which the machinery was acquired. There was testimony that the members of the assessor's staff discussed this with the assessor and that he approved it. In this manner the assessor's newly prepared tables for depreciation of machinery used percent good factors that each year allowed one year less depreciation than the applicable percent good

factors published by the State Board of Equalization. This would result in less depreciation and thus a higher assessment to the taxpayer. Respondent submitted the tables of the State Board of Equalization at the equalization hearing and contended these tables should have been used by the assessor in assessing respondent's machinery.

There was a conflict in the testimony at the assessment appeals board hearing as to how the new schedule resulted in this shift of one year. A witness called by respondent suggested that it was done mistakenly; however, a witness from the assessor's office testified that the schedule was prepared to intentionally eliminate any depreciation for the year in which the machinery was acquired.

In its decision denying plaintiff a reduction in its 1967 property tax assessment, the assessment appeals board was cognizant of the refusal of the assessor to allow depreciation for the year in which the machinery was acquired. In making this determination the assessor reasoned that in many cases machinery acquired late in a taxable year would be only two or three months old on the next tax lien date, viz., the first Monday in March. The assessor's determination that such machinery was to be treated as new was found by the board to be reasonable. The board further noted this would eliminate the necessity of attempting to develop complicated tables for depreciation that would reflect depreciation for a partial year. There was further testimony at the hearing before the board of assessment appeals that the depreciation schedule was applied equally to all taxpayers in the county so that there was no discrimination against this particular taxpayer.

The trial court in arriving at its decision in favor of the taxpayer clearly noted it was applying the weight of the evidence test in reviewing the record of the assessment appeals board. In one of its conclusions of law the trial court stated: "The scope of judicial review in the Superior Court is governed by the 'weight of the evidence' test, not by the 'substantial evidence' test. Under Revenue and Taxation Code section 1605.5, this court must review the equalization to determine whether the findings and conclusions of the Assessment Appeals Board are supported by the weight of the evidence."

In applying the "weight of the evidence" test to the equalization record the court made a further conclusion of law as follows: "The Assessor arbitrarily misused the date in the State Board of Equalization 'percent good' schedule. The Assessment Appeals Board's determination that the Assessor's depreciation method was correct and fair is not supported by

the weight of the evidence. Plaintiff's machinery and equipment ought to be valued by applying the State Board 'percent good' factors according to the instructions in AH-581, i.e., one year differently than the way in which the Assessor applied them."

As a result of its independent review of the evidence and its determination that the assessor's depreciation method was incorrect, the trial court found the taxpayer was entitled to reductions in the sum of $416,776 in full cash value, $104,194 in assessed value, and $12,034.41 in taxes and ordered a refund to the taxpayer in the sum of $12,034.41.

The defendants contend the trial court erred in applying the weight of the evidence test in reviewing the record before the county assessment appeals board. Defendant's position is that the trial court was required by law to review the entire record and to sustain the board's determination if there was substantial evidence in support of it.

### General Principles

Article XIII, section 9 of the California Constitution creates an administrative body known as the county board of equalization to equalize the valuation of taxable property within a county and to equalize disputed assessments. Under section 9 the board of supervisors of a particular county is the board of equalization. In 1962 section 9.5 was added to article XIII of the California Constitution to permit the board of supervisors of any county to create by ordinance an assessment appeals board for the county to act as a county board of equalization. The Alameda County Assessment Appeals Board has been created by the board of supervisors to perform this function for the County of Alameda.

The function of a county board of equalization is to determine the value of property for assessments by making all assessments as equal and fair as practicable and to apply the same ratio to market value uniformly within a county. (*Glidden Company* v. *County of Alameda,* 5 Cal. App.3d 371 [85 Cal.Rptr. 88, 86 Cal.Rptr. 464]; *Flying Tiger Line, Inc.* v. *County of L.A.,* 51 Cal.2d 314 [333 P.2d 323] [cert. den., 359 U.S. 1001 (3 L.Ed.2d 1031, 79 S.Ct. 1140)].)

The authorities uniformly hold a county assessment appeals board created pursuant to article XIII, section 9.5 of the Constitution serves the same function. "Assessment appeals boards of a county have power to equalize the valuation of taxable property in the county. They are governed by the general laws pertaining to county boards of equalization and by rules adopted by the county board of supervisors to 'facilitate their

work and to insure uniformity in the processing and decision of equalization petitions.' (Cal. Const., art. XIII, § 9.5.)" (*Stevens* v. *Fox Realty Corp.,* 23 Cal.App.3d 199, 204 [100 Cal.Rptr. 63]. See also *Griffith* v. *County of Los Angeles,* 267 Cal.App.2d 837 [73 Cal.Rptr. 773] [cert. den., 395 U.S. 945 (23 L.Ed.2d 463, 89 S.Ct. 2018)]; *County of L.A.* v. *Tax Appeals Bd. No. 2,* 267 Cal.App.2d 830 [73 Cal.Rptr. 469].)

### Scope of Review

■ The scope of judicial review in such cases as this is explained in *Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345]: "The duty of determining the value of the property and the fairness of the assessment is confided to the appropriate county board of equalization. Furthermore, in discharging this duty, the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. [Citations.] The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding, . . ." "The determination of the board will not be rejected by the reviewing court if there is in the record substantial evidence to support the board's determination." (*A. F. Gilmore Co.* v. *County of Los Angeles,* 186 Cal.App.2d 471, 477 [9 Cal.Rptr. 67]. See also *Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *County of San Diego* v. *Stiles,* 268 Cal.App.2d 261 [73 Cal.Rptr. 868]; and *Best* v. *County of Los Angeles,* 228 Cal.App.2d 655 [39 Cal.Rptr. 665].)

From a long and continuous line of California decisions, it is manifest that in a judicial review of the findings of a county board of equalization or a board of assessment appeals, the superior court is not permitted to independently weigh the evidence, but is required to apply the substantial evidence rule. Under the independent judgment test the trial court is required to "weigh the evidence, and exercise its independent judgment on the facts, as well as on the law, . . ." (*Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75, 84 [87 P.2d 848].) In those cases wherein the substantial evidence test is to be applied, the trial court does not weigh the evidence in the administrative record nor does it exercise its independent judgment; rather it reviews the entire record to determine if there is substantial evidence to support the findings of the administrative agency. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 55 Cal.2d 867 [13 Cal.Rptr. 513, 362 P.2d 337].)[2]

---

[2]The differences between the two tests are discussed in California Administrative Mandamus (Cont. Ed. Bar 1966) sections 5.74-5.75. See also Netterville, *Judicial*

Respondent concedes the long-standing rule has heretofore required the application of the substantial evidence test in reviewing the administrative decision of a local board of equalization. Respondent argues, however, that continued application of this test is no longer warranted. In support of this assertion respondent points out that in the 1968 session the Legislature added the following language to Revenue and Taxation Code section 1605.5: "At the hearing the final determinations by the board shall be supported by the weight of the evidence." While this amendment is directed to the actions of a county board in its conduct of an equalization hearing, respondent claims that if the section is to have any meaning it should also be applied to the trial court in its judicial review of the administrative hearing. Indeed the trial court in the instant case adopted this view concluding that under Revenue and Taxation Code section 1605.5 the trial court was required to review the actions of the assessment appeals board to determine if they were supported by the weight of the evidence.

Moreover, support for the trial court's analysis of Revenue and Taxation Code section 1605.5 has also been demonstrated by a commentator on property tax assessment. According to Ehrman, *Administrative Appeal and Judicial Review of Property Tax Assessments in California* (1970) 22 Hastings L.J. 1, 20, the 1968 amendment "does seem to have substituted the so-called 'independent judgment' or 'weight of the evidence' test for the 'substantial evidence' test in property tax court appeals."[3]

California's traditional method of reviewing property tax appeals decisions came under widespread criticism prior to the amendment in

Review: The "Independent Judgment" Anomaly (1956) 44 Cal.L.Rev. 262, 277-280; Netterville, *The Substantial Evidence Rule in California Administrative Law* (1956) 8 Stan.L.Rev. 563.

The determination of whether there should be a plenary judicial review of an administrative agency or a limited judicial review has had a tortuous course of action in the courts. (See Kleps, *Certiorarified Mandamus*, 2 Stan.L.Rev. 285.) In making such determination the courts have considered the nature of the agency, the subject matter with which it is dealing, and the particular type of right involved. (Kleps, *supra*, p. 302.) In the final analysis it remains for the Supreme Court "to establish standards for determining which cases require such independent judgment review and which call for only a substantial evidence review of the entire record." (*Bixby v. Pierno*, 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242].)

[3]Compare, *Host International, Inc.* v. *County of San Mateo*, 35 Cal.App.3d 286 [110 Cal.Rptr. 652]; and *Georgia-Pacific Corp.* v. *County of Butte*, 37 Cal.App.3d 461 [112 Cal.Rptr. 327]. In these two cases the Court of Appeal took cognizance of the amendment to Revenue and Taxation Code section 1605.5 but found it unnecessary under the circumstances to determine if the amendment required the trial court to apply the independent judgment test.

question as a result of several assessor scandals and great inequalities in assessment results. (See 4 Assem. Interim Com. Report No. 20, Revenue and Taxation, Problems of Property Tax Administration in California (Dec. 1966) pp. 7-40 (1 Assem. J. Appendix (1967)); Holbrook & O'Neill, *The California Property Tax: Proposed Means of Return to Democratic Principles* (1954) 27 So.Cal.L.Rev. 415, 430; and Carr, *Property Assessments—Protest, Appeal and Judicial Review* (1964) 39 State Bar J. 877, 883-884.) The 1966 Assembly Report specifically stated that, "One of the major factors contributing to the breakdown in property tax administration in California has been the lack of an effective means for administrative appeal *and judicial review of assessments.*" (See p. 52, italics added.)

It is significant to note, however, that after the various assembly reports on this subject, the 1968 amendment to section 1605.5 was confined to the actions of the local board of equalization and did not mention the scope of judicial review in the trial court. Moreover, we observe that at the same time that section 1605.5 was amended to include the provision reading, "At the hearing the final determinations by the board shall be supported by the weight of the evidence," section 1609.2 was added to the Revenue and Taxation Code. This section reads: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence may be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions." (Added by Stats. 1968, ch. 1213, § 1, p. 2293.)

Given this addition, the amendment in section 1605.5 takes on new meaning. Since section 1609.2 appears to broaden the scope of admissible evidence that the board may consider (cf. *A. F. Gilmore Co.* v. *County of Los Angeles, supra,* 186 Cal.App.2d 471; and *Rancho Santa Margarita* v. *San Diego Co.* (1933) 135 Cal.App. 134, 141-143 [26 P.2d 716], with § 1609.2), concern might be expressed that evidence would be admitted before the board without significant weight, e.g., hearsay matters. Consequently, the administrative body is directed by section 1605.5 to "weigh" the evidence to assure its decisions will be based on evidence whose total qualitative weight will support its determination notwithstanding its lesser standards of admission. Thus, the amendment is simply directed toward the administrative body and is not authority for a trial court to apply a "weight of the evidence test" in reviewing these de-

cisions in place of the traditional "substantial evidence test." Even if section 1605.5 might be interpreted in the manner suggested by respondent, such interpretation may be an unconstitutional delegation of powers by the Legislature "insofar as it purported to authorize the superior court to reweigh the evidence." (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 132 [173 P.2d 545].)

Our analysis of Revenue and Taxation Code section 1605.5 finds support in a recent Court of Appeal case, *Westlake Farms, Inc* v. *County of Kings*, 39 Cal.App.3d 179 at page 184 [114 Cal.Rptr. 137]: "A county board of supervisors 'is the factfinding body designated by [the Constitution] to remedy excessive assessments' (*Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353, 362 . . .) and to hold that the 1968 amendment to section 1605.5 is a direction to the superior courts to reweigh the evidence presented at equalization hearings would shift the equalization responsibility from the board to the superior court in contradiction of the Constitution."

■ This does not end the question of scope of judicial review, however, since two recent and significant decisions of our Supreme Court may have a bearing in the matter. *Bixby* v. *Pierno, supra,* 4 Cal.3d 130 was decided before the waiver of oral argument in the instant case and *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] was filed March 25, 1974, after such waiver. From these two cases there has emerged a significant change in the scope of judicial review of certain administrative agencies.[4] Although *Bixby* and *Strumsky* were both specifically involved with the scope of judicial review of proceedings in administrative mandamus brought pursuant to Code of Civil Procedure section 1094.5, their holdings would seem to apply to all reviews of administrative decisions, regardless of how they happen to reach the judicial system. Thus, although the instant case does not involve an action in administrative mandamus but rather

---

[4]Prior to *Bixby* and *Strumsky* the courts placed great emphasis on the nature of the agency involved in determining the appropriate scope of judicial review. "Briefly, the cases have developed the following rules applicable to the review of administrative decisions: Trial courts must exercise their own independent judgment, based upon the weight of the evidence, in reviewing those decisions of statewide, legislatively created administrative agencies which are claimed to have deprived petitioner of his 'vested' or 'constitutional' rights. However, the trial courts are permitted to employ an ordinary substantial evidence review of all other administrative decisions, including the rulings of 'local' agencies and statewide agencies constitutionally empowered to exercise 'judicial functions,' even if the agency decision had affected or annulled 'vested' rights. . . ." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 152, concurring opn. of Burke, J. See also Cal. Administrative Mandamus (Cont. Ed. Bar 1966) §§ 5.52-5.75, pp. 64-91, 1974 Supp. pp. 31-41.)

a review of the decision of a board of assessment appeals under Revenue and Taxation Code section 5103 et seq., no sound reason appears why *Bixby* and *Strumsky* would not be determinative of the scope of review.

*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, held that in reviewing the decisions of an administrative agency of legislative origin having statewide jurisdiction, the trial court must exercise its independent judgment on the evidence in a limited trial de novo if the decision substantially affects a fundamental vested right. The test set forth in *Bixby* is stated as follows: "Whether the judicial review of the administrative decision should be restricted to determining if such decision is supported by substantial evidence on the whole record or should be extended to an independent examination by the court, depends on whether or not such decision affects a fundamental vested right of the individual." (P. 144.)

The court in *Bixby* specifically stated, however, it was not deciding the appropriate judicial review for a local agency or state agency of local jurisdiction. (See p. 137, fn. 2.) The court in *Bixby* also specifically noted that it was not deciding the scope of judicial review for the decisions of a constitutionally created agency with adjudicative powers. (*Id.,* p. 141, fn. 7.)

*Bixby* was followed by *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28 in the continuing evolution of redetermining the scope of judicial review of administrative agencies. The Supreme Court in *Strumsky* reached one of the undecided questions singled out in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 137, footnote 2, and posed the question: "When, upon judicial review of an administrative order or decision pursuant to section 1094.5 of the Code of Civil Procedure, it is claimed there has been a prejudicial abuse of discretion in that the findings are not supported by the evidence, what is the proper scope of review when the respondent agency is a local agency or a state agency of local jurisdiction?" (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 31.) The court answered the question by using the same test as the *Bixby* court: ". . . we hold that the scope of judicial review applicable to adjudicatory orders or decisions . . . of administrative agencies of legislative or local origin, is as follows: If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision

does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record." (*Id.*, p. 32.)

The rationale for the holding in *Bixby* and *Strumsky* is stated as follows: "When an administrative decision affects a right which has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated because '[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' ([*Bixby*] at p. 144.)" (*Strumsky,* at p. 34.)

The court in *Strumsky* significantly noted, "This reasoning, of course, applies with equal force to all administrative decisions of an adjudicatory nature—regardless of the administrative agency involved." (*Id.*, pp. 34-35.) The impact of this broad statement might appear to be applicable to the decisions of a local board of assessment appeals, such as in the instant case.

However, because of other language in the *Strumsky* opinion it is necessary to inquire into the nature of the administrative agency involved before the proper scope of judicial review can be determined. In *Strumsky* the review concerned the findings of a local agency of legislative origin. The court in *Strumsky* explained in great detail the distinctions between a local agency of legislative origin and a constitutional agency insofar as the source of their powers and extent of their judicial power is concerned. The high court concluded: ". . . that the 1950 amendment to section 1 of article VI of the California Constitution had the effect of leaving the entire judicial power concentrated in the state judicial system and some *constitutional agencies*, . . ." (*Westlake Farms, Inc.* v. *County of Kings, supra,* 39 Cal.App.3d 179, 184.)

The court in *Strumsky* commented upon the fundamental distinction between a local agency and a constitutional agency and stated at pages 35 to 36: "The roots of the indicated distinction insofar as it relates to so-called 'constitutional agencies' can be traced to their ultimate source in one of our most fundamental constitutional doctrines, that of separation of powers. That doctrine, which has been a part of the Constitution of this state since its inception, is presently expressed in article III, section 3 as follows: 'The powers of state government are legislative, executive, and

judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution.'* (Italics added.) It is the italicized proviso which forms the basis for the exercise of judicial powers by so-called 'constitutional agencies'; insofar as specific constitutional provisions relating to the individual agencies in question directly vest judicial power in them, the agencies so favored can perform judicial functions to the extent of the grant without offending the doctrine of separation of powers. (See *Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 132; see also Cal. Administrative Mandamus, *supra,* §§ 1.3, 5.67, pp. 5, 76.) *Thus, even though a vested fundamental right be involved, the determination of the agency on factual issues is entitled to all the deference and respect due a judicial decision.'* (Italics added.)

It might be argued that a board of assessment appeals is not a constitutional agency but is a "local" agency created by the board of supervisors. If this argument is valid it would follow that the scope of judicial review would be in accord with the rule laid down in *Strumsky* if a substantial vested right is involved. While it is true that a board of assessment appeals may only be created by the board of supervisors by local ordinance, nonetheless the power of the board of supervisors to create an assessment appeals board derives specifically from the California Constitution article XIII, section 9.5. Since such power stems directly from the Constitution we deem a local board of assessment appeals to be a constitutional agency performing the same functions as a local board of equalization pursuant to article XIII, section 9.[5] As a constitutional agency it can exercise such judicial powers as granted to it by the Constitution. (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28.)

Not all constitutional agencies have judicial powers. "Because an agency may be, in part, established by constitutional provision does not of itself exempt it from trial *de novo* review of its decision. The criterion to be met is the decision making power must be based upon a constitutionally granted authority to adjudicate. (See *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131-132 . . .; *Ishimatsu* v. *Regents of the University of Cal., supra,* 266 Cal.App.2d 854, 863-864; Deering, California Administrative Mandamus (Cont. Ed. Bar) § 5.68, pp. 78-79.)" (*Alta-Dena Dairy* v. *County of San Diego,* 271 Cal.App.2d 66, 76 [76 Cal.Rptr. 510].)

---

[5]We also take note of the anomaly that would follow if the judicial review of a local board of assessment appeals were to be governed by the independent judgment test while the review of a board of supervisors sitting as a board of equalization is governed by the substantial evidence test. Such a holding could also create an equal protection problem. (See *Westlake Farms, Inc.* v. *County of Kings, supra,* 39 Cal. App.3d 179, 184.)

That article XIII sections 9 and 9.5 confer adjudicative powers on local boards of equalization and assessment appeals boards can scarcely be gainsaid. The specific language of sections 9 and 9.5 casts a duty upon the local board to equalize the valuation of the taxable property in the county. It is well settled "that in discharging this duty, 'the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question' . . ." (*Universal Cons. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 356.)

In performing its adjudicative functions pursuant to the grant of power from the Constitution, the factual determinations of a board of assessment appeals are "entitled to all the deference and respect due a judicial decision." (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 36.) We thus conclude that the scope of review for a superior court in reviewing the administrative record of a local board of assessment appeals is that of reviewing the entire record to determine if the findings are supported by substantial evidence.

We reach this conclusion notwithstanding implications in *Bixby* and *Strumsky* that the independent judgment test should apply to all agencies wherein a fundamental vested right is involved. Moreover we observe that since "Proceedings under tax statutes are *in invitum* and the statute will be strictly construed in favor of the taxpayer and against the state" (*People* v. *Mahoney,* 13 Cal.2d 729, 739 [91 P.2d 1029]) it can be argued that the right to recover taxes paid under protest is a fundamental right. However, since the instant case involves a constitutional agency with limited judicial powers, its factual determinations are "entitled to . . . the deference and respect due a judicial decision," and this is so "*even though a vested fundamental right be involved.*" (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 36, italics added.) Moreover, given the substantial impact upon the property tax system that change in the standards of judicial review might create, this court is reluctant as an intermediate appellate court to effect a change in the scope of review of a constitutional agency. Finally, we observe that our Supreme Court in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130 at page 140 noted that *it* was empowered "to establish standards for determining which cases require such independent judgment review and which call for only a substantial evidence review of the entire record."

*Remand*

In view of our holding that the substantial evidence test is the proper scope of judicial review of a local board of assessment appeals, it follows that the trial court erred in applying the independent judgment test. Since the trial court applied an improper standard in reviewing the evidence of the assessment appeals board it is necessary to reverse the judgment and remand the case for the making of new findings by the trial court in accordance with the substantial evidence test. In accordance with this test the trial court must review the entire record of the assessment appeals board to determine whether the findings are supported by substantial evidence, and in the absence of fraud or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property. (*Bank of America* v. *Mundo, supra,* 37 Cal.2d 1.)

In performing its function of reviewing the record of the assessment appeals board the trial court must focus on two issues which are separate and distinct but are occasionally obscured. ". . . the function of the superior court is to examine the administrative record to determine whether the board's findings are supported by substantial evidence and whether the board has committed any errors of law. [Citations.]" (*Westlake Farms, Inc.* v. *County of Kings, supra,* 39 Cal.App.3d 179, 183.) These issues are closely related but require separate identification. The first is a review of the quantum of evidence before the board to support the board's factual determination of the value of the taxpayer's properties. (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App.3d 461, 475.) In discharging its duty ". . . the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. [Citations.] The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding . . . and . . . the board is the sole judge of questions of fact and of the values of property." (*Bank of America* v. *Mundo, supra,* 37 Cal.2d 1, 5.) "This consideration involves the scope of review" (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App.3d 461, 475), and as we have previously discussed the trial court is required to apply the substantial evidence test in its review of the factual issues before the board. If the board's findings are supported by substantial evidence on questions of fact, that will constitute "a judgment that is not collaterally assailable in the courts." (*Los Angeles etc. Co.* v. *County of L.A.,* 162 Cal. 164, 168 [121 P. 384, 9 A.L.R. 1277].) Without intending any intrusion on the fact finding process of the trial court on remand

we do note from our review of the record in the case at bench that there appears to be a conflict in the evidence before the assessment appeals board on the issue of valuation of the taxpayer's machinery. Whether this evidence was of sufficient substantiality to support the findings of the board is for the trial court to determine.

In the usual assessment contest the superior court is called upon to review the transcript of the proceedings before the board acting in the administrative proceeding to determine if there is substantial evidence to support the factual findings of the board. There is, however, a recognized exception to the foregoing which permits courts an avenue of narrow inquiry. (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App.3d 461, 473.) "The board's valuation figure and the *method* of valuation employed by it are reviewable only for arbitrariness, abuse of discretion or failure to follow the standards prescribed by law." (*County of Amador* v. *State Board of Equalization,* 240 Cal.App.2d 205, 216 [49 Cal.Rptr. 448], italics added.) This brings us to the second issue before the trial court in reviewing the record of the assessment appeals board, and that relates to the *method* of valuation employed by the assessor and approved by the board. It has been held the method of valuation "presents a legal issue, the judicial review of which is within the province of the trial court. [¶] This judicial inquiry is pursued independent of and apart from the decision of the Board and unrestricted by any consideration of the scope of review." (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App. 3d 461, 474. See also *Board of Supervisors* v. *Archer,* 18 Cal.App.3d 717, 724-725 [96 Cal.Rptr. 379]; *Sacramento Mun. Util. Dist.* v. *County of El Dorado,* 5 Cal.App.3d 26, 31 [84 Cal.Rptr. 748].)

In a conclusion of law the trial court concluded that the assessor arbitrarily misused the data in the State Board of Equalization schedules and that the "Assessment Appeals Board determination that the assessor's depreciation method was correct and fair is not supported by the weight of the evidence." In the hearing before the assessment appeals board a key issue was whether the new depreciation schedules, about which respondent complained, were developed by the assessor deliberately or resulted from a mistake made by the assessor. At the hearing appellant presented the testimony of Mr. Pyle, an employee of the assessor's office, who testified that the tables of depreciation prepared by him intentionally disallowed any depreciation for the year in which the machinery was acquired. The reason for this deliberate action was to eliminate the necessity of developing depreciation tables for a partial year. Pyle emphasized that the adoption of these depreciation tables was not a mistake but

was done deliberately to avoid getting involved in month-by-month costs and depreciation since some items would be only two or three months old on the lien date.

It was respondent's position that the depreciation schedules developed by the assessor evolved from a mistake which would result in an arbitrary method of determining the value of taxpayer's properties. Crawford, a witness called by respondent, implied in his testimony that the depreciation schedules formulated by the assessor resulted from a mistake by the assessor in the use of the tables of the State Board of Equalization. The board resolved this conflict in the evidence and determined that the depreciation schedules were developed by the assessor in a deliberate manner and did not result from a mistake.

Although the trial court concluded the assessor arbitrarily misused the data it is clear the court also predicated this conclusion upon other findings of fact wherein the court erroneously applied the independent judgment test and thereby substituted its judgment for that of the board. Thus, we are unable to determine if the trial court was reviewing the factual basis for the method used by the assessor (in which case it would be bound by the substantial evidence test), or if it was determining the method used by the assessor was contrary to law. In the latter event, of course, the trial court is determining a question of law unencumbered by the substantial evidence test. (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal. App.3d at p. 474.)

We agree with respondent's contention that the taxpayer may challenge the method of valuation used by the assessor in the superior court and the court may review it for errors of law. (See *De Luz Homes, Inc* v. *County of San Diego,* 45 Cal.2d 546, 565 [290 P.2d 544]; *Red Bluff Developers* v. *County of Tehama,* 258 Cal.App.2d 668, 674-675 [66 Cal.Rptr. 229]; *County of Amador* v. *State Board of Equalization,* 240 Cal.App.2d 205, 216 [49 Cal.Rptr. 448]; *Board of Supervisors* v. *Archer, supra,* 18 Cal. App.3d 717, 724; *Sacramento Mun. Util. Dist.* v. *County of El Dorado, supra,* 5 Cal.App.3d 26, 31.)

We note, however, that respondent has not directed us to any authority which indicates the particular method used by the assessor in the case at bench was contrary to law or was at variance with any standards prescribed by the Legislature. The respondent has merely asserted the assessor was wrong and suggested an alternative method of valuation.

For the purposes of remand, we call attention to some general principles governing the actions of assessors and boards of equalization. ■ "It is

the rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that the assessments are both regularly and correctly made. [Citation.]" (*Red Bluff Developers* v. *County of Tehama, supra,* at p. 673.) In *County of Tuolumne* v. *State Board of Equalization,* 206 Cal.App.2d 352, 366 [24 Cal.Rptr. 113], the court stated: "Each county assessor is required by Revenue and Taxation Code, section 401, to assess all taxable property within the county at its full cash value. . . . Yet neither by Constitution nor by statute is the assessor directed to follow any particular method in determining full cash value."

■ In its review of the methods of valuation employed by the assessor, the trial court on remand might be guided by the succinct statement in *Red Bluff Developers* v. *County of Tehama, supra,* 258 Cal.App.2d 668, 674: "Put another way, specific valuations and methods of valuation employed are reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature." We also point out, "The taxpayer has the burden of showing the board that the assessor's figures are improper and the assessments are not fair and equitable. [Citations.]" (*Griffith* v. *County of Los Angeles,* 267 Cal.App.2d 837, 842 [73 Cal.Rptr. 773].)

■ One other contention made by appellants is that the court erred in taking judicial notice of the assessor's handbook. We find no merit in this contention since the document in question had been extensively discussed in testimony before the assessment appeals board and a portion of it had been introduced in evidence before the board. It is well established that assessor's handbooks are subject to judicial notice by the courts (*Gallagher* v. *Boller,* 231 Cal.App.2d 482, 489 [41 Cal.Rptr. 880]; *Bank of America* v. *County of Los Angeles,* 224 Cal.App.2d 108, 114 [36 Cal. Rptr. 413, 6 A.L.R.3d 491]; see also. Evid. Code, § 452, subd. (h)), and since the method of valuation was at issue here, the assessor's handbook was properly considered by the trial court. (*Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App.3d 461, 473-474.)

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Molinari, P. J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 17, 1974.