[No. A028547. First Dist., Div. One. Jan. 26, 1987.]

KAISER CENTER, INC., Plaintiff and Appellant, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

John P. Macmeeken, Pettit & Martin, Kenneth Drexler and Drexler & Leach for Plaintiff and Appellant.

Richard J. Moore, County Counsel, and James F. May, Senior Deputy County Counsel, for Defendants and Respondents.

OPINION

RACANELLI, P. J.—This case concerns a challenge to the 1977-1978 property tax assessment of the Kaiser Building and associated properties in the City of Oakland.

PROCEDURE

Plaintiff Kaiser Center, Inc. (Kaiser) appeals from a judgment in its favor setting aside the decision of the assessment appeals board and remanding for further proceedings. Kaiser contends that the court should have found the value of the subject property to be no more than $41,450,000, as testified to by its expert witnesses, and should have entered judgment accordingly without a remand.

Plaintiff, a corporation whose stock is held by various companies formerly associated with Kaiser,[1] owned and operated the property bounded by Webster, 20th, Harrison and 21st Streets in the City of Oakland. Improvements consisted of the multistory Kaiser Building, the 20th Street and Webster Street Malls and associated parking garage. Alameda County and the City of Oakland through the assessor's office (hereafter collectively County) set the 1977-1978 full assessment value of the Kaiser property at $51,584,900. Kaiser paid the tax due on the assessed value and thereafter challenged this assessment by timely filing an application for change in property tax assessment (reduction) with the county board of assessment appeals (Board) claiming a refund. (Rev. & Tax. Code, § 5097.) The assessor then filed for an increase in the assessed value to $80,167,400.

After a four-day hearing, the Board decided that the full value should be set at $64,680,200. Kaiser appealed this decision to the superior court. During trial proceedings, the County agreed that the Board's decision was not supported by substantial evidence and stipulated to entry of judgment in favor of Kaiser and a remand to the Board. Thereafter, the parties requested the Board to reconsider the matter on the basis of the existing evidentiary record.

On rehearing, the Board, using the "income approach," fixed an assessed value of $62,741,450. Kaiser again sought judicial relief; and once again the County agreed that the valuation was not supported by substantial evidence. The superior court again determined that no substantial evidence existed to

---

[1] At the time of the hearing in July 1979, the following corporations owned Kaiser Center, Inc.: Kaiser Industries—25 percent, Kaiser Cement—10 percent, Kaiser Steel—20 percent and Kaiser Aluminum & Chemical—45 percent. At that time, Kaiser Industries was in the process of liquidation.

support the Board's assessment, and accordingly set aside the decision and once again remanded for further proceedings while retaining jurisdiction. The instant appeal is taken from that judgment.

ADMINISTRATIVE HEARING

Testimony presented at the hearing before the Board in July 1979 disclosed the following: The Kaiser Building, an unusual crescent design, was erected in 1959-1960 to house the various Kaiser family companies. The top floors of the 28-story building are devoted to executive use of Kaiser companies; other floors house general offices. The bottom two floors include a cafeteria, an auditorium, a medical clinic, commercial space and extensive lobbies. The two malls consist of three-story buildings devoted to retail and commercial uses with the Mirabeau Restaurant being considered a main tenant. The five-story parking garage has 1,183 parking spaces and a roof garden.

The principal dispute between the parties at the hearing concerned the proper valuation approach to be used: income capitalization or replacement cost.[2] (Cal. Admin. Code, tit. 18, §§ 6, 8.) Kaiser argued that the income approach, based on the highest and best use of the property as general office space, was the appropriate method of valuation. Kaiser presented testimony of two expert real estate appraisers who valued the property at $41,450,000 and $38 million using the income approach. In addition, Kaiser officials testified that the building was inefficiently constructed, was no longer of substantial value to the dispersing Kaiser companies, and would not be rebuilt if destroyed or demolished.

---

[2]The State Board of Equalization has adopted rules which govern fair market value. (Cal. Admin. Code, tit. 18, §§ 1-54.) Rule 8 describes the income approach and provides that it is the "preferred" valuation technique where older, improved real property is involved: "The income approach to value is used in conjunction with other approaches when the property under appraisal is typically purchased in anticipation of a money income and either has an established income stream or can be attributed to real or hypothetical income stream by comparison with other properties. . . . It is the preferred approach for the appraisal of improved real properties and . . . when reliable sales data are not available and the cost approaches are unreliable because the reproducible property has suffered considerable physical depreciation, functional obsolescence or economic obsolescence, [or] is a substantial over or underimprovement. . . . (Cal. Admin. Code, tit. 18, § 8, subd. (a).)

Rule 6 describes the cost method of value which is essentially a replacement measure. The rule provides that the cost approach is preferred only where other approaches are unavailable: "It is particularly appropriate for construction work in progress and for other property that has experienced relatively little physical deterioration, is not misplaced, is neither over nor underimproved, and is not affected by other forms of depreciation or obsolescence." (Cal. Admin. Code, tit. 18, § 6, subd. (a); see *Bret Harte Inn, Inc.* v. *City & County of San Francisco* (1976) 16 Cal.3d 14, 23-25 [127 Cal.Rptr. 154, 544 P.2d 1354] [discussion of differing valuation methods].)

In contrast, the assessor argued that the building was unique, built as a world headquarters designed to enhance Kaiser's corporate image, and consequently ought to be valued on the basis of its replacement cost. The assessor's appraiser responsible for assessing the property testified that the cost method was employed because of the unique world headquarters status of the building which was not otherwise readily transformable to general office use. The reviewing appraiser criticized Kaiser's evidentiary presentation and questioned certain assumptions and hidden costs in the expert testimony of income estimates for general office use.

DISCUSSION

I

Primarily, Kaiser contends the trial court was required to find the property had a full cash value of no more than $41,450,000. Arguing that its evidence of value using the income method was uncontroverted, Kaiser insists the trial court should not have remanded to the Board for further proceedings but was obligated to resolve the issue accordingly. Such decision, it argues, would not constitute an improper invasion of administrative discretion because the undisputed facts were susceptible of only one conclusion, and the Board is a quasi-judicial body subject to the general rules governing review of judicial decisions.

The County, on the other hand, argues that the court properly remanded to the Board because the Board itself has the constitutional duty to equalize assessments, and the court has no authority to exercise its independent judgment on the conflicting evidence.

On balance, the County's position is well taken.

In its statement of decision, the trial court declined to order the Board to find the value of the property consistent with Kaiser's expert testimony. The court acknowledged that a board of assessment appeals differs from other administrative agencies as " '[T]he Board is the sole judge of questions of fact and of the value of property.' *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (41 Cal.App.3d 163, 177, 116 Cal.Rptr. 160) (1974)."

Under article XIII, section 16 of the California Constitution, the Board is vested with the authority to equalize assessments. "That article XIII sections 9 and 9.5 [now § 16] confer adjudicative powers on local boards of equalization and assessment appeals boards can scarcely be gainsaid. The specific language of sections 9 and 9.5 casts a duty upon the local board to equalize the valuation of the taxable property in the county. ▮ It is well

settled 'that in discharging this duty, "the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question" . . .' (*Universal Cons. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 356 [153 P.2d 746].)" (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 176 [116 Cal.Rptr. 160].)

■ "[T]he scope of review for a superior court in reviewing the administrative record of a local board of assessment appeals is that of reviewing the entire record to determine if the findings are supported by substantial evidence." (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d at p. 176; accord *Bret Harte Inn, Inc.* v. *City & County of San Francisco, supra,* 16 Cal.3d at p. 23.) ■ Here, the court concluded the value set by the Board ($62,741,460) was not supported by substantial evidence although the method used was proper. But the trial court has no power to exercise its independent judgment on the evidence, declare that the plaintiff's value testimony applies and then direct the Board to enter the assessment value of $41,450,000.[3] (See *Hunt-Wesson Poods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d at p. 176.) "[T]he taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. [Citations.] The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding [citation] and . . . the board is the sole judge of questions of fact and of the values of property." (*Bank of America* v. *Mundo* (1951) 37 Cal.2d 1, 5 [229 P.2d 345].)

Furthermore, the evidence was not without conflict. Kaiser's claim of uncontradicted value relies on an offhand, prefatory comment by an assessor's representative that "to a new owner or on the market generally, I would be hard pressed to arrive at a value as high as the Applicant's." The statement, made during opening remarks of the assessor's case supporting use of the replacement cost method, was neither a statement nor concession of the actual appraiser of the property. Indeed, the main dispute centered upon which valuation method was appropriate.

---

[3]The cases upon which Kaiser relies are readily distinguishable. In *Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157 [272 P.2d 16] and *Pacific Home* v. *County of Los Angeles* (1953) 41 Cal.2d 844 [264 P.2d 539], the parties basically agreed to value but disagreed with method or property interest held. In *Tele-Vue Systems, Inc.* v. *County of Contra Costa* (1972) 25 Cal.App.3d 340 [101 Cal.Rptr. 789], the issue concerned taxation of real property or of fixtures—not differing appraiser valuations. Thus, questions of law were at issue, not questions of fact.

Other cases cited by Kaiser deal with other administrative agencies and not constitutionally empowered assessment appeal boards.

 ██ ██ In fact, the assessor offered no appraisal value based on the income method for the Kaiser Building itself because he believed that method would not reflect an accurate assessment.[4] As to the two mall buildings, however, the County used the income method arriving at an assessment value which differed from Kaiser's by roughly $2 million. And, as noted, the County's experts challenged the validity of the appraisals presented by Kaiser's experts. Thus, contrary to Kaiser's assertion, the evidence was *not* uncontradicted permitting the trial court's independent evaluation thereof. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d at p. 176; see also *Bret Harte Inn, Inc.* v. *City & County of San Francisco, supra,* 16 Cal.3d at p. 23.)

Clearly, the court's order of remand to the Board was proper. Upon such remand, the Board must reevaluate its assessment and consider such additional evidence as may be presented by the assessor utilizing the income approach to the entire property.[5]

## II

██ Kaiser next points out that, in view of the trial court's determination that the Board properly used the income method—a question of law—the Board is required to use the income method on remand. The County agrees the Board's use of the income approach was proper but denies that the judgment itself authorizes it as the exclusive method to be used.

In its final judgment, the court specifically deleted certain references to its statement of decision but issued no directions to the Board to use the income method.[6] However, both in the court's statement of decision and the

---

[4]The choice of method of valuation resides in the assessor's office subject, of course, to review by the Board and the courts. (See *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 563-564 [290 P.2d 544].)

[5]Revenue and Taxation Code section 5144 provides in relevant part: "If the court finds that an assessment is void in whole or in part, it shall render judgment for the plaintiff for the amount of the taxes paid on that portion of the assessment that is found to be void." Kaiser claims this means the court should have rendered judgment for it and entered its appraisers' assessment value. But the trial court ordered the Board's decision "set aside"; it found only *part* of the assessment void. Apparently, the part that was void was the tax on the difference between the Board's assessed value of $62,741,450 and the assessor's tax roll value of $51,584,900.

[6]The judgment provides in pertinent part (deletion shown in brackets): "IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. The decision of the Board of Assessment Appeals of the County of Alameda dated December 21, 1981, on Application for Change In Property Tax Assessment No. 77-2227 filed by Plaintiff, is set aside;

"2. Plaintiff's Application for Change In Property Tax Assessment is remanded to the Board of Assessment Appeals for its determination of the fair market value of the property referred to in said Application [in accordance with the Court's Statement of Decision based upon the substantial evidence in the record;]

"3. The Court shall retain jurisdiction of this matter pending the decision of the Board of Assessment Appeals on Plaintiff's Application for Change In Property Tax Assessment; . . ."

Board's own findings and conclusions, "the income approach to value is considered the most appropriate for valuing the subject property . . . ." Since this finding was not challenged by Kaiser, the trial court did not determine that issue as a matter of law.

■■■ As previously discussed, the Board is vested with the constitutional authority to evaluate property and to equalize assessments. The method of valuation used is within its sole discretion. (See *Dressler* v. *County of Alpine* (1976) 64 Cal.App.3d 557 [134 Cal.Rptr. 554].) However, since it clearly appears that all interested parties agree with the use of the income method, it is unlikely that the Board would now change its adopted approach to value.

Judgment affirmed. Each party to bear its respective costs.

Elkington, J., and Newsom, J., concurred.