[No. F008474. Fifth Dist. June 22, 1988.]

NORBY LUMBER COMPANY, INC., Plaintiff and Respondent, v. COUNTY OF MADERA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Michael D. Ott, County Counsel, and William G. Smith, Deputy County Counsel, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Robert D. Milam, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Appellant.

Herbert E. Bartow for Plaintiff and Respondent.

## OPINION

**MARTIN, Acting P. J.**—Defendant county appeals from a judgment entered on plaintiff's complaint for refund of ad valorem property taxes on a Madera County sawmill. This action followed the findings and decision of the Madera County Board of Equalization determining the application of Norby Lumber Company, Inc., for changed assessment on the 1983-1984 assessment roll.[1]

### FACTS

In 1982, the E. B. Yancey Lumber Co., Inc., a California corporation (Yancey), owned and operated a sawmill business at 31470 Avenue 12 in Madera, California. On August 18, 1982, Yancey entered into an agreement of sale of real and personal property with plaintiff Norby Lumber Company, Inc., a California corporation. Yancey agreed to sell plaintiff corporation approximately 87 acres of Madera County real property; logging machinery and equipment, log hauling machinery and equipment, sawmill machinery and equipment, and other related machinery and equipment; trucks, trailers, automobiles and other rolling stock; lumber and log inventory situated in seller's yard; inventory and fuel and oil; Yancey's federal timber sales contracts; and seller's goodwill. Yancey also covenanted not to compete with plaintiff corporation for a period of five years from and after the closing date of the sale. Plaintiff corporation agreed to pay the sum of $1,681,523 in six equal annual installments. The installment payments were evidenced by an $843,000 promissory note from plaintiff corporation to Yancey. Yancey agreed to subordinate that note to $3.3 million in loans owing by plaintiff corporation to Bank of America. Plaintiff corporation also agreed to assume payment of seller's three secured promissory notes to Bank of America N. T. & S. A. These notes had a combined principal

---

[1]Defendant county also appealed "from the Court's Order of February 27, 1987, denying Defendant COUNTY OF MADERA's Motion for Leave to File Request for Statement of Decision." Defendant county has not raised this issue in its briefs on appeal and therefore it is deemed waived. (*People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [188 Cal.Rptr. 123].)

balance of approximately $699,582.29. The parties allocated the purchase price of the business and assets as follows:

| Item | Amount |
|---|---|
| Real property | $822,920 |
| Personal property | $600,000 |
| Rolling stock | $258,603 |

The Madera County Assessor's Office assessed the property as follows for the 1982-1983 fiscal year:

| Description | Amount |
|---|---|
| Land | $ 279,560 |
| Structures | $3,786,740 |
| Equipment | $ 911,189 |
| Subtotal | $4,977,489 |
| | |
| Personal property | $ 127,081 |
| Total | $5,104,570 |

As a result of the change of ownership, the Madera County Assessor's Office reappraised the land, structures, equipment, and personal property to determine the fair market value of the property as of the date of the sale. The assessor's office initially arrived at the following values for the 1983-1984 fiscal year:

| | |
|---|---|
| Land | $ 560,320 |
| Structures | $3,862,474 |
| Equipment | $ 911,189 |
| Subtotal | $5,333,983 |
| | |
| Personal property | $ 396,014 |
| Total | $5,729,997 |

Madera County Appraiser Christi Thompson made the initial appraisal after change of ownership. Although she considered the replacement cost approach to valuation, she ultimately arrived at a value by increasing the 1982 valuation by 2 percent.

Plaintiff corporation subsequently complained about the increased assessment. In August 1983, Pat Irvine, another appraiser with the Madera

County Assessor's Office, voluntarily reduced the assessed valuation in the following manner:

| | |
|---|---|
| Land | $ 560,000 |
| Structures | $2,780,000 |
| Equipment | $ 910,000 |
| Subtotal | $4,250,000 |
| | |
| Personal property | $ 396,014 |
| Total | $4,646,014 |

Irvine reduced the initial assessment by $1,082,474. This represented a 20 percent reduction in the overall assessment.

On or about September 12, 1983, plaintiff corporation filed an application to reduce the 1983-1984 property tax assessment with the Madera County Board of Equalization. On or about December 12, 1983, plaintiff corporation filed a document entitled "Payment of Taxes Under Protest and Petition for Reduction of Assessment" (Rev. & Tax. Code, § 620) with the Madera County Tax Collector's Office. Dean Flowers, Madera County Auditor-Appraiser, had valued the machinery, equipment and office equipment in conjunction with the initial appraisal. After plaintiff filed its application for assessment reduction with the county board of equalization, County Assessor Richard Gordon assigned Flowers to conduct a complete independent reappraisal of the value of the property. Flowers considered the replacement cost, income, and comparable sales approaches to valuation in reappraising the real property. After utilizing the replacement cost approach, Flowers concluded the assessed value was $6.5 million, an amount in excess of the assessment roll value. Assessor Gordon concluded the lower roll value was justified.

The Madera County Board of Equalization conducted a hearing on the plaintiff's application on May 13-14, 1985, and June 3, 1985. The board prepared and approved findings and decision on the application on June 25, 1985. The findings and decision stated in relevant part: "7. Applicant's request that the assessed valuation of its parcel be reduced to $2,020,886 was based primarily on the amount that Applicant allegedly paid to the Yancy [sic] Lumber Company for the purchase of the subject property in August of 1982. The evidence, however, indicated that Applicant's purchase price was not a reliable indicator of the full cash value of the property as of the date of sale for several reasons, each of which this Board finds would independently support this finding:

"a. Operating losses totaling $1,684,016 which were suffered by the Yancy [sic] Lumber Company in the three years prior to its sale of the subject

property indicated that as of the date of sale the Yancy [sic] Lumber Company was in an even more tenuous financial condition than the lumber industry in general and that the sale of its lumber mill was therefore a distress sale;

"b. As part of the purchase, Applicant assumed at least joint liability under some $24,000,000 in outstanding timber contracts, which the evidence showed were approximately $9,000,000 above the market price for timber as of the date of sale.

"c. Yancy [sic] Lumber Company subordinated an $843,000 note from Applicant to $3,300,000 in loans to Applicant from Bank of America, which indicated that Mr. Yancy [sic] must have believed that the Lumbermill property was adequate security for its loan although said property was also part of the security available to Bank of America to which it could have turned for satisfaction of the $3,300,000 debt owed to it by Applicant.

"d. The Board finds that, given the expertise and experience of Mr. Edgar Norby in the lumber industry, and given the state of the lumber industry at the time of the sale, it is not likely that Mr. Norby would have been willing to pay the full fair market value for a lumber mill at that time.

"*DETERMINATION OF ISSUES* [¶] 1. The Madera County Assessor utilized the Replacement Cost Approach to value in placing an assessed value of $4,646,014 on the subject property as of the date of the sale in August of 1982.

"2. Applicant failed to present sufficient independent evidence relevant to the full cash value of the property to carry its burden of showing that the subject property had not been correctly assessed." Based on the foregoing findings, the county board affirmed the 1983-1984 assessment of $4,646,014.

On August 21, 1985, plaintiff corporation filed a claim for refund of $54,333 in tax payments for fiscal years 1983-1984 and 1984-1985. Plaintiff alleged the assessor used an improper method of valuation in assessing the buildings, machinery and equipment and erroneously applied the replacement cost method of determining fair market value. On the same date, plaintiff corporation filed a complaint in superior court for refund of property taxes. The Madera County Superior Court, sitting without a jury, conducted a trial on the complaint on June 24 and 25, 1986, and July 8, 1986. On December 19, 1986, the court filed its tentative decision, stating in relevant part: "There are two questions presented. The first is, did the Board of Equalization use a proper or improper method of evaluation.

"The second question is, if the Board of Equalization used a proper method but improperly applied the method of evaluation, was there substantial evidence to support the Board of Equalization's findings.

". . . . . . . . . . . . . . . . . .

"The Board of Equalization's findings indicated that they used the replacement cost approach.

"Mr. McKenzie, Area Administrator for the Assessments Standards Division of the State Board of Equalization, informed the Court that the replacement cost approach required that the replacement cost be established less depreciation plus inflation with the consideration of a percentage for economic obsolescence and considering the prevailing economic conditions within the industry. It would also require that the normal wear and tear and excessive wear and tear from proper use be considered. It further would require a personal observation of the actual condition of the machinery, equipment and buildings in question. That is, a physical inspection of the property is absolutely essential in a case of this type.

". . . . . . . . . . . . . . . . . .

". . . [T]he method actually used to establish the appraised value of $5,333,983 was in fact two percent over each previous year of the value with a small adjustment made by Christi Thompson to arrive at that figure. This is not the use of the replacement cost approach as outlined above. This figure, before it was given to the Board of Equalization, was reduced to $4,250,000. Pat Irvine, as county employee and working for the tax appraiser [sic], reviewed this matter and reduced the $5,333,983 by approximately 20% for economic factors. This, of course, was the figure that was used by the Board of Equalization. This number or appraised value was not arrived at by the use of the replacement cost approach as defined above.

". . . . . . . . . . . . . . . . . .

"Upon a review of the transcript, it appears clear to the Court that even though the replacement cost approach was discussed, the replacement cost approach was not used by the County in establishing the appraised value of this property. The alleged replacement cost approach appraisal as outlined by [assessor's appraiser] Dean Flowers was in fact not used but was only to show that the value actually arrived at by [initial appraiser] Christi Thompson and Irvine was correct. . . .

"The Court finds the Board of Equalization used Christi Thompson's appraisal modified by Irvine. This is not a proper method. This was not by

any of the acceptable means for an appraisal. Since the Board of Equalization did not use the proper method, notwithstanding their findings which are not supported by the record of those proceedings, this Court is not required to decide if the Board of Equalization improperly applied a proper method.

"·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"The argument was made that the timber contracts affected the value of the sale. This appears to be pure speculation. If the respondent, MADERA COUNTY'S, position is to be accepted at face value that the timber sales were approximately a $9,000,000 liability, then Yancy [*sic*] should have given Norby the sawmill plus approximately $5,000,000. This is absurd. The Court accepts the testimony that the timber contracts were of no significance to the sale of the sawmill or affected its value. The court has read and considered *Amador Valley Joint Union High School* vs. *State Board of Equalization* (1978), 22 C3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281] . . . and also *Schoderbek* vs. *Carlson* [(1984)], 152 CA3d 1027 [199 Cal.Rptr. 874] . . . . These have been merged in the Board of Equalization Administrative Code [tit. 18, § 2] [*sic*] . . . . The Court is aware that this administrative code section was effective September 20, 1985, and this transaction occurred prior to that time. However, this administrative code change simply reflects the [*Schoderbek* and *Amador Valley*] cases which were in fact law at the time this sale took place. The Court is going to follow the administrative code as amended and therefore finds the appraised value as of date of purchase to be the purchase price of $1,422,920."

On January 22, 1987, the superior court filed a judgment decreeing the Madera County Assessor's method of valuation of the sawmill was invalid and improper; the board of equalization's finding and decision on plaintiff's application for reduction of assessment was arbitrary, an abuse of discretion, and failed to follow the standards prescribed by law; the sale of the sawmill to Norby Lumber Company, Inc., was an open-market transaction within the meaning of Revenue and Taxation Code section 110 and the "full cash value" or "fair market value" of the sawmill under said section on the date of purchase was the acquisition cost of $1,422,920, consisting of land valued at $346,920, structures valued at $476,000, and machinery and equipment valued at $600,000. The court ordered defendant county to refund taxes paid for the 1983-1984 fiscal year and all subsequent years on assessed valuations of the property in excess of the acquisition cost as adjusted together with interest at the rate of 9 percent per annum from the date plaintiff paid the taxes.

On February 27, 1987, the court denied defendant county's motion for leave to file a request for statement of decision. Defendant county filed a timely notice of appeal.

## Introduction

All property taxed by local government shall be assessed in the county, city, and district in which it is situated. (Cal. Const., art. XIII, § 14.) The county board of supervisors, or one or more assessment appeals boards created by the county board of supervisors, shall constitute the county board of equalization for a county. (Cal. Const., art. XIII, § 16.) ■ The function of a county board of equalization is to determine the value of property for assessments by making all assessments as equal and fair as practicable and to apply the same ratio to market value uniformly within a county. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 168 [116 Cal.Rptr. 160].) ■ The assessment of property for the purpose of taxation is a function of the executive branch of the government and the judiciary has no power or jurisdiction to inquire as to the actual value of property to determine whether or not it has been properly assessed. (*Domenghini* v. *County of San Luis Obispo* (1974) 40 Cal.App.3d 689, 696 [115 Cal.Rptr. 608].)

■ The county board is not bound by technical rules of evidence. (*A.F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67].) ■ The duty of determining the value of the property and the fairness of the assessment is confided to the appropriate county board of equalization. In discharging this duty, the board's determination upon the merits of the controversy is conclusive. The taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d 163, 169.) ■ If a plaintiff taxpayer claims only that the assessor and the board of equalization erroneously applied a valid method of determining full cash value, the decision of the board is equivalent to the determination of a trial court and the trial court in turn may review only the record presented to the board. The trial court may overturn the board's decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].) In those cases where the substantial evidence test is to be applied, the trial court does not weigh the evidence in the administrative record nor does it exercise its independent judgment. Rather, it reviews the entire record to determine if there is substantial evidence to support the findings of the administrative agency. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d 163, 169.)

■ Where the legality of the valuation method used by the assessor is in issue, the scope of judicial review is not limited to the evidence. (*Carlson* v.

*Assessment Appeals Bd. I* (1985) 167 Cal.App.3d 1004, 1009 [213 Cal.Rptr. 555].) When the taxpayer challenges the validity of the valuation method itself, the issue raised is a question of law. That question is whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14, 23.) Reviewing courts must presume the assessing officers have performed their duties and have assessed all properties fairly and upon an equal basis. (Cal. Code Regs., tit. 18, § 321, subd. (a).) Where taxes are claimed to be excessive, before they can be set aside there must be evidence to show the assessments were fraudulently or mistakenly made or that an improper method of valuation was pursued. Put another way, specific valuations and methods of valuation employed are reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature. (*Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 186-187 [114 Cal.Rptr. 137].)

■ When a board of equalization purports to decide a question of law or refuses to hear a case on the ground it involves only a question of law to be decided by the courts, a taxpayer has the right to resort to the courts for determination of such question. (*Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 681 [117 Cal.Rptr. 874].) Thus, if the issue is a legal one the judicial inquiry is pursued independently of the board's decision and unrestricted by the usual limits on the scope of review. The court is not restricted to the transcript of the proceedings before the board, but may receive additional evidence bearing on the legal question. (*Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 474-475 [112 Cal.Rptr. 327]; Ehrman & Flavin, Taxing Cal. Property (2d ed. 1979) § 30.10, pp. 698-700.)

I. *Did the Trial Court Erroneously Weigh the Evidence and Enter Judgment Establishing the Taxable Value of the Real Property?*

As defendant county properly states: "The central question presented by this appeal is whether the Superior Court has the authority to determine and establish the assessed value of real property for purposes of taxation when it finds that the Assessor and/or the local Board of Equalization has utilized an improper method of valuation."

■ Defendant county contends the trial court had no authority to independently weigh the evidence and enter judgment establishing the taxable value of the subject property. The county maintains the lower court was required to remand the matter to the local board of equalization for further proceedings on the question of value.

Defendant specifically contends: ". . . Norby's Complaint alleged both that the Assessor (and therefore the Board) had utilized an improper method of valuation and alternatively that the Assessor had incorrectly applied a proper method of valuation. The trial court's Judgment discloses that the court found that the method of valuation utilized by the Assessor was improper . . . . Since the trial court's finding of improper method necessarily rendered moot Norby's allegation of improper application of a valid method of valuation and since it is clear that under no circumstances does a taxpayer have a right to a trial de novo in Superior Court to resolve conflicting issues of fact as to the taxable value of his property, upon its finding of improper method the trial court's authority to independently examine the evidence immediately terminated and there was nothing left for the trial court to do but remand the case to the Board of Equalization for further proceedings on the issue of value."

In *Kaiser Center, Inc.* v. *County of Alameda* (1987) 189 Cal.App.3d 978 [234 Cal.Rptr. 603], plaintiff taxpayer challenged the 1977-1978 property tax assessment of the Kaiser building and associated properties in the City of Oakland. After a four-day hearing, the Alameda County Assessment Appeals Board decided the full value of the subject property should be set at $64,680,200. Kaiser appealed this decision to the superior court. During trial proceedings, the county agreed the board's decision was not supported by substantial evidence and stipulated to entry of judgment in favor of Kaiser and a remand to the board. The parties later requested the board to reconsider the matter on the basis of the existing evidentiary record. On rehearing, the board used the income approach to valuation and fixed an assessed value of $62,741,450. Kaiser again sought judicial relief and once again the county agreed the valuation was not supported by substantial evidence. The superior court again determined no substantial evidence existed to support the board's assessment. The court set aside the decision and remanded again for further proceedings while retaining jurisdiction. Kaiser appealed from this judgment contending the court should have found the value of the subject property to be no more than $41,450,000, as testified to by its expert witness, and should have entered judgment accordingly without a remand.

The First District Court of Appeal affirmed, holding the order of remand to the board was proper. Article XIII, section 16, of the California Constitution confers adjudicative powers on local boards of equalization and assessment appeals boards. The specific language of the section casts a duty upon the local board to equalize the valuation of the taxable property in the county. In discharging this duty, the board is exercising judicial functions and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and

conclusive judgment of the tribunal created by law for the determination of that question. The scope of review for a superior court in reviewing the administrative record of a local board is that of reviewing the entire record to determine if the findings are supported by substantial evidence. The trial court in *Kaiser* concluded the value set by the board was not supported by substantial evidence although the method used was proper. However, a trial court has no power to exercise its independent judgment on the evidence, declare the plaintiff's value testimony applies, and then direct the board to enter the lower assessment value proposed by the taxpayer. The taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. The question presented to the superior court is whether there is evidence of sufficient substantiality before the board to justify the finding and the board is the sole judge of questions of fact and of the values of property.

Plaintiff contends defendant's reliance on *Kaiser Center, Inc.* v. *County of Alameda, supra,* 189 Cal.App.3d 978, is misplaced because that case concerned the erroneous application of a proper method of valuation. Plaintiff contends the instant case concerns an improper method of valuation. As noted above, when a taxpayer contends there has been an improper application of a valid method of valuation, the trial court may overturn the board's decision only when there is no substantial evidence to support it. However, when the taxpayer challenges the method of valuation itself, the trial court is presented with a question of law and is not bound by the substantial evidence test. Rather, a judicial inquiry is made independent of and apart from the decision of the board and unrestricted by any consideration of the scope of review. (*Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 473-474 [112 Cal.Rptr. 327].)

▮ Assessors have developed three basic methods for determining full cash value: (1) the market data method; (2) the income method; and (3) the cost method. Under the market data method, the assessor examines and correlates the prices resulting in other transactions involving comparable properties. The validity of this method rests upon the assumption comparable properties have comparable full cash values. Under the income method, the assessor capitalizes the sum of future income attributable to the property, less an allowance for the risk of partial or no receipt of income. This method rests upon the assumption in an open market a willing buyer would pay a willing seller an amount approximately equal to the present value of the future income to be derived from the property. Under the cost method, the assessor determines the cost of replacing reproducible property with new property of similar utility or of reproducing the property at its present site and at present price levels less the extent to which the value has been reduced by depreciation, including both physical deterioration and obsoles-

cence. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14, 24; Cal. Code Regs., tit. 18, §§ 3-8.)

■ In the instant case, the board of equalization held use of the replacement cost approach to value was proper because "there neither existed nor was offered into evidence sufficient data of comparable sales or of income derived from comparable lumber mills such as would have permitted utilization of either the Comparable Sales Approach to Value or the Income Approach to Value." The trial court reviewed the transcript of the proceedings before the board of equalization and its findings and concluded the replacement cost approach was not in fact used by the county in establishing the appraised value of the property, although the replacement cost approach was discussed by assessor's personnel. The court held (1) the assessor established the appraised value upon the change of ownership by simply adding 2 percent over the previous year's value with a small adjustment and (2) this did not amount to the use of the replacement cost approach. In other words, the trial court found the assessor and the board had utilized an improper method of valuation of the subject property.

■ If the board has used an improper method of value or has failed to use proper criteria in valuing the property and there is no evidence or there is a conflict in the evidence from which a proper value can or should be made, the trial court must remand the matter to the board for further proceedings. (*Universal Cons. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 363 [153 P.2d 746]; *Georgia-Pacific Corp.* v. *County of Butte, supra,* 37 Cal.App.3d 461, 477-478; Ehrman & Flavin, Taxing Cal. Property, *supra,* § 30.11, pp. 701-702.) The constitutional responsibility to assess property falls to the local board of equalization and not to the courts. In resolving disputed factual issues, the trial court impermissibly shifts the ultimate equalization responsibility from the local board of equalization to the superior court. (See *Westlake Farms, Inc.* v. *County of Kings, supra,* 39 Cal.App.3d 179, 183-184.) ■ Thus, in the instant case, the trial court should have remanded the matter to the local board for further proceedings on the issue of valuation.

However, plaintiff taxpayer contends the trial court properly rendered judgment for a refund of taxes and was not required to remand the matter to the board. Revenue and Taxation Code section 5144 states: "If the court finds that an assessment is void in whole or in part, it shall render judgment for the plaintiff for the amount of taxes paid on that portion of the assessment that is found to be void. The taxes paid on the portion of the assessment not found to be void shall constitute valid taxes which, if paid after delinquency, shall carry penalties, interest, and costs." Plaintiff contends the foregoing provision specifically allows the rendition of a money judg-

ment for a refund of taxes when the court determines an assessment is invalid.

██ The use of the term "void" in Revenue and Taxation Code section 5144 corresponds in meaning with the term "validity" in the statute preceding it, implying that "void" refers to any taxes which are invalid. An invalid tax logically means any assessment which the taxpayer is not legally responsible for paying. (*Prudential Ins. Co.* v. *City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1158 [236 Cal.Rptr. 869], mod. 192 Cal.App.3d 1647a.)

Plaintiff contends the Supreme Court has consistently affirmed judgments ordering a refund of taxes without remanding the matter to the board when the assessor has used an improper method of valuation. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14; *Mahoney* v. *City of San Diego* (1926) 198 Cal. 388 [245 P. 189]; *Flying Tiger Line, Inc.* v. *County of L.A.* (1958) 51 Cal.2d 314 [333 P.2d 323], cert. den. 359 U.S. 1001 [3 L.Ed.2d 1031, 79 S.Ct. 1140]; *Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157 [272 P.2d 16].)

Defendant contends such an interpretation of Revenue and Taxation Code section 5144 would empower the trial court to determine the assessed value of property every time it finds the assessor's opinion of value is incorrect. Defendant's contention is well taken. As noted above, the Supreme Court has long held a remand is required where the trial court determines the board has used an improper method of valuation. Cons. Oil Co. v. *Byram, supra,* 25 Cal.3d 353, 363.) Plaintiff has not cited and we have been unable to find any case construing Revenue and Taxation Code section 5144 as a limitation upon or exception to this longstanding rule.

██ The trial court erroneously weighed the evidence and entered judgment establishing the taxable value of the subject property rather than remand the matter to the local board of equalization for further proceedings as required by law.

### II., III.*

* * * * * * * * * * * * * * * * * *

---

* See footnote, *ante,* page 1352.

The judgment of the lower court is reversed and the case is remanded to the trial court with instructions to remand the entire matter to the board of equalization for further proceedings on the issue of value. Defendant county is awarded its costs on appeal.

Ballantyne, J., and Pettitt, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied August 31, 1988.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.