Filed 12/29/17; Certified for Partial Pub. 1/25/18 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MACHAVIA, INC., | B280735 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC 523173) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge.  Affirmed.

_____

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Marshall R. Cole for Plaintiff and Appellant.

Lamb & Kawakami, Michael K. Slattery, Shane W. Tseng; Mary C. Wickham, County Counsel, and Richard Girgado, Deputy County Counsel, for Defendants and Respondents.

_____

Plaintiff and appellant Machavia, Inc. challenges the trial court's grant of summary judgment in favor of defendants and respondents the County of Los Angeles (the County) and John R. Noguez, in his capacity as Los Angeles County Assessor (the assessor).[1] Machavia sued the County for a refund of property taxes on two aircraft. The trial court granted summary judgment on the ground that Machavia had failed to exhaust its administrative remedies prior to filing suit. Machavia now contends that it was not required to exhaust administrative remedies because various exceptions applied. We affirm.

## FACTS AND PROCEEDINGS BELOW

This case arises from the County's assessment of property taxes over two small jet aircraft Machavia owned. Machavia purchased the first of these planes, a Cessna CJ2 (CJ2), in 2003, and sold it in 2006. Machavia purchased the second aircraft, a Cessna CJ3 (CJ3), in 2007. Machavia is incorporated in Delaware and claims that its principal place of business is the U.S. Virgin Islands. According to the County, both aircraft have been primarily located inside the County when not in use. The County claims authority to tax the aircraft pursuant to Revenue and Taxation Code section 5362,[2] which provides that "[t]he assessor of the county in which the aircraft is habitually situated shall assess the aircraft at its market value."

The County began sending annual tax bills for the CJ2 to Machavia in 2005. Until 2007, these bills were sent to a post office box in Manhattan Beach where Machavia did not always receive them. The bills went unpaid, and the County sent Machavia notices of intent to enforce collection and notices of lien to the same post office box. Machavia learned about the bills in

---

[1] For the sake of convenience, this opinion refers to defendants collectively as the County.

[2] Unless otherwise specified, subsequent statutory references are to the Revenue and Taxation Code.

2006, and the company's president, Douglas Mockett, wrote a letter to the County claiming that the County lacked authority to levy taxes on Machavia because the company had moved to the Virgin Islands.

County officials met with Mockett in 2007 to discuss the tax bills. At the meeting, Mockett told the County that Machavia had sold the CJ2 prior to 2007, and the County officials agreed to cancel the tax bill for 2007. According to the County, its officials reviewed Machavia's flight logs and agreed to reduce the tax bills for 2005 and 2006 according to the time the CJ2 spent in the Virgin Islands. The County official who led the meeting stated that he told Mockett that, in order to preserve its rights with respect to future tax disputes, Machavia would need to file appeals with the County's Assessment Appeals Board (AAB). Machavia claims that Mockett left the meeting with the understanding that Machavia owed no taxes for 2005 and 2006 because of its foreign status, and that the County never informed him about the need to file further appeals with the AAB.

After the meeting, the County sent new tax bills for the years 2005 and 2006 to Machavia's address in the Virgin Islands. These bills reduced the taxes Machavia owed from the previously assessed amounts, and they allowed for payment without penalty until the end of 2008.

In 2008, the County sent Machavia a tax bill for the CJ3, which Machavia had purchased in 2007. Machavia did not pay the bill, and the County imposed a lien on the CJ3. In April 2009, Mockett wrote to the County that Machavia had received the bill, but that "we have some issues with the bill" and requested that the County remove its lien. The County responded in July 2009 with a letter stating that, in the 2007 meeting, the County had "reduced the original assessments for 2005 and 2006 to allow for the apportionment of the time your aircraft actually spent in the U.S. Virgin Islands." The letter also

3

reiterated that, in order to challenge the County's assessments, Machavia would need to file an appeal with the AAB.

In 2008, the County sent Machavia a notice of audit for the years 2005 through 2008. In 2009, the County sent the result of its audit, which stated that "the result is a 'No Deficiency' for all the years audited." An attached ledger listed "ND" for all columns, which Machavia interpreted to mean that it owed no further taxes for the years 2005 through 2008.

Also in 2009, the County sent Machavia a tax bill for 2009 for the CJ3. Mockett replied with a letter stating that Machavia believed it did not owe taxes, and referring to the "No Deficiency" finding regarding the audit. The County replied, stating that the 2009 tax bill was correct, and directing Machavia to file an appeal with the AAB by November 30, 2009, if it disagreed with the assessment. The letter also explained that "[t]he 'No Deficiency' finding merely indicated that the initial assessment was correct and no additional escape assessment will be made for the year audited."

In January 2010, Machavia filed an appeal with the AAB challenging the 2009 assessment. The assessor requested two continuances, delaying the hearing until August 2010. Machavia did not attend the hearing, claiming that it did not receive notice of the continuance. The AAB decided the appeal in favor of the County on the basis of Machavia's non-appearance and denied Machavia's request for rehearing.

The County sent another annual tax bill to Machavia for 2010, and Machavia replied with another letter claiming on the same bases as before that it did not owe any tax. In October 2012, when it discovered that the County had placed a lien on the CJ3, Machavia filed new appeals with the AAB. In November 2013, the AAB denied the appeals as untimely.

In response, Machavia filed a petition for a writ of mandate in the trial court. Machavia and the AAB entered into a stipulation to settle, under which the AAB agreed to hold a new

4

hearing to address the validity of Machavia's appeal for the challenged years. After holding a hearing in 2015, the AAB again denied Machavia's petition on the ground that it was untimely.

Machavia filed a complaint in the trial court in 2013. In its operative complaint, Machavia sought a refund of the property taxes, which it ultimately paid under protest. In addition, Machavia alleges that it was deprived of due process because it did not have a meaningful opportunity to have its case heard. Next, Machavia contends that the assessor erred in its assessment of the aircraft. Finally, Machavia sought declaratory judgment, contending that the County is equitably estopped from collecting taxes, penalties, and interest. The County moved for summary judgment, which the trial court granted on the ground that Machavia had failed to prove that it had exhausted its administrative remedies.

## DISCUSSION

Machavia raises several arguments in support of its contention that the trial court erred by granting summary judgment in favor of the County. First, Machavia contends that it exhausted its administrative remedies by filing appeals with the AAB. Next, Machavia contends in the alternative that it was unnecessary for it to exhaust its administrative remedies because various exceptions applied. Finally, Machavia contends that the County is equitably estopped from relying on failure to exhaust administrative remedies because the County's conduct induced Machavia not to appeal various tax bills through the ordinary administrative channels. We reject these arguments and affirm the judgment of the trial court.[3]

---

[3] Machavia also contends that the trial court abused its discretion by denying Machavia's motion for a new trial. This claim fails for the same reasons as Machavia's challenges to the trial court's grant of summary judgment.

## I. Standard of Review

Summary judgment is proper when all the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears an initial burden of showing that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.) If the defendant meets this burden, the plaintiff has the burden to demonstrate one or more triable issues of material fact as to the cause of action or defense. (*Ibid.*) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

In reviewing summary judgment, "[w]e review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.)

## II. Requirement to Exhaust Administrative Remedies in Property Tax Disputes

Our Supreme Court recently explained that "[a]s a general rule, a party must exhaust available administrative remedies as a prerequisite to seeking relief in the courts. 'In the property tax context, application of the exhaustion principle means that a taxpayer ordinarily may not file or pursue a court action for a tax refund without first applying to the local board of equalization for assessment reduction under . . . section 1603 and filing an administrative tax refund claim under section 5097.' " (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1264.)

6

Under the rule of exhaustion, " 'an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." ' " (*Id.* at p. 1267.)

Even if the rule of exhaustion of administrative remedies is satisfied, judicial review of decisions of the AAB is limited and deferential. As the court explained in *Norby Lumber Co. v. County of Madera* (1988) 202 Cal.App.3d 1352, 1362, "[t]he assessment of property for the purpose of taxation is a function of the executive branch of the government and the judiciary has no power or jurisdiction to inquire as to the actual value of property to determine whether or not it has been properly assessed." In any challenge to the actions of a board of equalization's determination, "[t]he trial court may overturn the board's decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process." (*Ibid.*) By the same logic, the courts must defer to the board of equalization on questions of apportionment—in other words, in determining what portion of a property is subject to taxation by a county. (See *Ice Capades, Inc. v. County of Los Angeles* (1976) 56 Cal.App.3d 745, 755 ["The development of a formula of apportionment is primarily the task of the authority imposing the tax."].)

### III. Machavia Failed to Exhaust Its Administrative Remedies

In *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, our Supreme Court explained in detail the three-step process a party must follow in order to challenge an assessment in the trial court: "The first step is the filing of an application for assessment reduction under section 1603, subdivision (a), which provides: 'A reduction in an assessment on the local roll shall not be made unless the party affected or his or her agent makes and files with the county board [of equalization] a verified, written application showing the facts claimed to require the reduction

7

and the applicant's opinion of the full value of the property.' The second step, which occurs after payment of the tax, is the filing of an administrative refund claim under section 5097, subdivision (a), which provides in relevant part that '[n]o order for a refund . . . shall be made except on' the timely filing of a verified claim for refund.  By statute, an application for assessment reduction filed under section 1603 'also constitute[s] a sufficient claim for refund under [section 5097] if' it states that it 'is intended to constitute a claim for refund.  If [it] does not so state [the applicant], may thereafter and within the [specified time] period . . . file a separate claim for refund of taxes extended on the assessment which the applicant applied to have reduced pursuant to [s]ection 1603 . . . .'  (§ 5097, subd. (b).)  The third and final step in the process is the filing of an action in superior court pursuant to section 5140, which provides that a person who paid the property tax may bring an action in superior court against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter.'  A court action may not 'be commenced or maintained . . . unless a claim for refund has first been filed pursuant to Article 1 (commencing with Section 5096).'  (§ 5142, subd. (a).)"  (*Id.* at pp. 1307-1308.)

To exhaust administrative remedies, a taxpayer must challenge an assessment within established deadlines: "the taxpayer must apply for a reduction to the county assessment appeals board or county board of equalization during a specified time period, generally in the same year in which the assessment is made." (*Ellis v. County of Calaveras* (2016) 245 Cal.App.4th 64, 70.)  "The timely filing of a proper claim for refund is a statutory prerequisite to a refund action." (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 34.)

In this case, Machavia acknowledges that it did not challenge the assessments for the years 2005, 2006, 2008,

8

and 2010 until 2012. Machavia filed an appeal of the 2009 assessment in January 2010. None of these appeals were timely filed. (See §§ 80, 1603.) By failing to file timely challenges with the AAB, Machavia failed to exhaust its administrative remedies.

Machavia contends that it exhausted its administrative remedies because the AAB reached a stipulation with Machavia to re-hear Machavia's 2012 appeal, then once again rejected the appeal as untimely. The stipulation and the AAB's decisions rejecting the appeal are not part of the record. We may not conclude on this record that the AAB erred in rejecting Machavia's appeal as untimely, either in its initial decision or after agreeing to rehear the case.

## IV.    Exceptions to the Exhaustion Requirement

Machavia contends that it was not required to exhaust its administrative remedies before filing a claim in the trial court for three reasons. First, Machavia contends that the County's assessments were void because they failed to give notice to Machavia. Second, Machavia contends that its challenge did not involve questions of valuation. Finally, Machavia contends that the County failed to follow its own procedures by refusing to apportion Machavia's tax according to the time the aircraft spent outside California. We find no merit in any of these arguments.[4]

### A.    Notice to Machavia

Machavia contends that a taxpayer need not exhaust administrative remedies when a county fails to follow statutory procedures in assessing a tax, including by failing to give the taxpayer notice of the tax. Even if we assume for the sake of

---

[4] Because it is clear that Machavia's alleged exceptions to the doctrine of exhaustion of administrative remedies do not apply, we reject Machavia's argument that the County failed to meet its burden by failing to discuss these exceptions in its motion for summary judgment.

argument that Machavia's position is correct, it does not excuse Machavia from exhausting its administrative remedies. At most, the County's notice to Machavia was defective only with respect to the 2005, 2006, and 2007 bills, which the County sent to a post office box in Manhattan Beach that Machavia asserts was incorrect.[5] When Machavia found out about the tax bills, it wrote to the County, and the County agreed to a meeting in 2007. At that meeting, the County cancelled the 2007 tax bill because Machavia did not own the aircraft in question in 2007, and sent new reduced tax bills for the years 2005 and 2006 to Machavia's Virgin Islands address. Those bills allowed for payment without penalty until December 31, 2008. The County sent its subsequent bills to the Virgin Islands address, and Machavia acknowledges having received them. By sending new bills without penalty, the County cured any defect in its notice to Machavia. Instead of challenging these new bills immediately, Machavia waited four years before appealing these assessments with the AAB. Thus, any defect in the County's initial notice regarding these bills did not prejudice Machavia.

## B. Unconstitutional Application of Tax

Machavia contends that it did not need to exhaust its administrative remedies because its challenge was not based on the valuation of the property, but rather was based on the question of whether the County had the authority to tax its aircraft at all. Machavia notes that in a letter to Machavia, a County appraiser justified imposing a tax because " 'you have a business, a home and a hangar here in Los Angeles County and your aircraft spends the majority of its time here.' " Machavia also notes that in a deposition, a County official stated

---

[5] The County denies that it provided inadequate notice to Machavia by mailing the tax bills to the post office box, claiming that this was the most recent address the County had on file at the time. We need not address this point because we hold that Machavia is not entitled to relief in any case.

10

that it takes the owner's domicile into account in determining where an aircraft's primary situs is for purposes of property taxes.

But in challenging the County's method of determining what percentage of the value of the aircraft, if any, was subject to taxation in California, Machavia is essentially raising a question of apportionment. These issues are questions of fact in which we defer to the judgment of the AAB, just as we do for determining valuation. (See *Ice Capades, Inc. v. County of Los Angeles*, *supra*, 56 Cal.App.3d at p. 755.) We cannot conclude that the County is unreasonable in taking into account, when determining whether an aircraft is primarily located in California, the domicile of the owner of a company that owns the aircraft. Machavia's attempt to reframe this matter as a constitutional issue does not transform the dispute into a question of constitutionality in which it need not exhaust its administrative remedies.

### C. Refusal to Follow the County's Own Procedures

Machavia contends that it was not required to exhaust its administrative remedies because the County failed to follow its own procedures and apportion the tax bills according to the time Machavia's aircraft spent in California as opposed to other locations. In support of its position, Machavia cites two references in the County's papers supporting the motion for summary judgment to an "unapportioned tax bill." These two statements are insufficient to support an inference that the County was unwilling to follow its own procedures in apportioning Machavia's tax liability. Instead, they merely note that the bill in question did not take the apportionment process into account. In the same document, a County official made clear that the County was willing to apportion the tax liability of the aircraft. The official stated that "the Assessor's Office agreed to reduce the aircraft's assessment for 2005 and 2006 on an apportioned basis to remove from the assessment the portion of

11

the value attributable to the time that the aircraft was actually situated in the U.S. Virgin Islands."

## V. Equitable Estoppel

Machavia contends that because the County misled it and failed to provide proper notice of tax bills, the County is equitably estopped from relying on Machavia's failure to exhaust administrative remedies. We are not persuaded.

"Generally speaking, the doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another." (*In re Marriage of Valle* (1975) 53 Cal.App.3d 837, 840.) "Application of equitable estoppel against the assertion of a limitations defense typically arises through some misleading affirmative conduct on the part of a defendant." (*Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1268.) This can mean that the defendant "engaged in some calculated conduct or made some representation or concealed facts which induced the plaintiff not to file a claim or bring an action within the statutory time." (*Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1047.)

Machavia points to several instances in which it claims that the County either failed to notify Machavia of tax bills or misled it regarding the need to pay. But none of these instances show that the County engaged in "misleading affirmative conduct" that would justify the application of equitable estoppel. (*Spray, Gould & Bowers v. Associated Internat. Ins. Co., supra,* 71 Cal.App.4th at p. 1268.) First, Machavia notes that the tax bills for 2005 and 2006 were sent to the Manhattan Beach post office box, rather than Machavia's address in the Virgin Islands. But as we have already seen, if this was error, the County corrected it by meeting with Machavia in 2007 and issuing new bills for 2005 and 2006 with no interest and penalties. Machavia contends that, at the 2007 meeting, the

12

County misled it about the requirement to pay taxes for the years 2005 and 2006. But after the meeting took place, the County sent Machavia—at its Virgin Islands address—new bills for those two years. Even if County officials affirmatively misled Machavia during the 2007 meeting, the new bills should have been sufficient to disabuse Machavia of its misunderstandings, or at least to put the company on notice to enquire further.[6]

Machavia's allegations regarding subsequent years do not suggest affirmative misconduct by the County, but rather a failure by Machavia to understand the accurate information the County was providing. Thus, Machavia claims that it understood the 2008 audit and finding of " 'No Deficiency' " to mean that the County had cancelled its bills. But when Machavia raised this point with the County, a County official wrote back and explained that a finding of no deficiency meant merely that the County had determined its previous assessment was correct. Furthermore, on more than one occasion, County officials told Machavia that the proper means to challenge an assessment was through an appeal to the AAB. That Machavia disregarded or misunderstood the County's communications does not create a triable question of material fact as to whether the County affirmatively misled Machavia.

This is not a case in which Machavia was blindsided by misrepresentations or misstatements by County officials. Instead, Machavia chose to ignore numerous accurate statements from the County regarding its tax liabilities, and acted only after—in some cases, years after—the relevant deadlines for filing challenges had passed. Machavia has failed to show that equitable estoppel should bar the County from asserting

---

[6] Machavia claims that when the company received the corrected tax bills, "it believed that these bills had been cancelled." This is not a reasonable interpretation of a newly issued tax bill received after a meeting regarding the taxpayer's liability for that tax year.

Machavia's failure to exhaust administrative remedies as a defense.

## DISPOSITION

The trial court's order is affirmed.  Respondents are awarded their costs on appeal.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.

Filed 1/25/18

# <u>CERTIFIED FOR PARTIAL PUBLICATION</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MACHAVIA, INC., | B280735 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC 523173) |
| v. | |
| COUNTY OF LOS ANGELES et al., | ORDER MODIFYING THE OPINION TO BE CERTIFIED FOR PARTIAL PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

 The opinion in the above-entitled matter filed on December 29, 2017, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published with the exception of parts I, II, III, and IV of the Discussion and it is so ordered.

_____

ROTHSCHILD, P. J.   CHANEY, J.   JOHNSON, J.